# STEWART & COMPANY, Employer, and THE TRAVELERS' INSURANCE COMPANY, Insurer,

## vs.

## CORA L. HOWELL et al.

*Workmen's Compensation Act—Cause of Death—Evidence—Medical Testimony—Burden of Proof.*

On an issue as to whether an aneurism which resulted in death was caused by a blow received by deceased in the course of his employment, his widow was properly allowed to testify in regard to his feelings as expressed by him on his return home after the receipt of the blow.                    p. 430

That, on an issue as to whether an aneurism which resulted in death was caused or increased by an injury received in the course of decedent's employment, a question asked of a medical expert called for a speculative opinion as to what might have been the effect of the injury rather than for his judgment as to what its effect really was, is not cause for reversal, the witness having answered as if asked the latter question.       p. 430

That a question asked of a medical expert was leading is not cause for reversal, if it merely embodied what the witness had said in his answer to the preceding question.             p. 430

On an issue as to whether an aneurism which resulted in death was caused or aggravated by a blow received by deceased, it was proper to allow a medical expert to be asked what effect a blow inflicted on deceased would have upon hastening the trouble, assuming that there was a pre-existing aneurism. p. 431

In the case of a claim on account of a death alleged to have resulted from a blow which was received in the course of the deceased's employment, *held* that it was proper to refuse to direct a verdict for defendants, in view of testimony by the widow as to the difference between his apparent physical condition before the receipt of the blow and that thereafter, and the testimony of the physician who attended him that his death was due to the blow, and of another physician that a forcible

blow, which the evidence showed this to be, would aggravate an aneurism of the aorta, which malady was apparently the immediate cause of death.　　　　　　　　　　p. 432

On appeal from a decision of the State Industrial Accident Commission, the defendants were given all they were entitled to on the question of burden of proof by an instruction that the Commission determined that the death of claimant's decedent was not due to an accidental injury arising out of and in the course of his employment, and for that reason disallowed the claim; that said decision is *prima facie* correct, and the burden is upon the claimant to show by a preponderance of the evidence that death was due to an accidental injury arising out of and in the course of his employment, and if the minds of the jury are in a state of even balance upon this question, the verdict must be for the defendants.　　　　　　　　　　p. 433

Code, Art. 101, Section 56, providing that the decision of the Commission shall be *prima facie* correct for the purpose of a court proceeding and the burden of proof shall be upon the party attacking it, does not mean that additional testimony must be offered on appeal from the Commission, or that even as much testimony need be offered by the party taking the appeal as he produced before the Commission, the statute merely leaving upon the claimant, when he appeals, the burden previously upon him, and shifting the burden to the defendant on an appeal by him.　　　　　　　　　　pp. 433, 434

The refusal of a prayer as to the comparative value of testimony, or as to a proper differentiation between certain kinds of testimony, *held* proper in view of the fact that the granted prayers fully and fairly instructed the jury as to the law of the case.　　　　　　　　　　p. 434

*Decided June 16th, 1920.*

Appeal from the Baltimore City Court (DUFFY, J.).

The prayers granted and refused were as follows:

*Plaintiff's First Prayer.*—The jury are instructed, at the request of the claimant, that if they shall find from the evidence in this case that Adam J. Howell died on or about the

26th day of May, 1917, and that his said death was due to
accidental injuries received by him on or about the 4th day
of March, 1917, arising out of and in the course of his em-
ployment by Stewart and Company, one of the defendants in
this case, then the verdict of the jury must be in favor of the
claimant.    (*Granted.*)

*Plaintiff's Second Prayer.*—The jury are instructed, at
the request of the claimant, that if they shall find from the
evidence in this case that Adam J. Howell, while in the em-
ploy of Stewart and Company, one of the defendants in this
case, received injuries on or about the 4th day of March,
1917, arising out of and in the course of his said employ-
ment, and that said injuries produced or caused a rupture
of the aorta or large blood vessel leading from the heart re-
sulting in his death on or about the 26th day of May, 1917,
if the jury shall so find, then the verdict of the jury must
be in favor of the claimant, even though the jury may be-
lieve from the evidence in this case that said Adam J. Howell
was suffering prior to and at the time of receiving said in-
juries with an aneurism or weakened condition of said blood
vessel.    (*Granted.*)

*Defendants' First Prayer.*—The defendants pray the Court
to instruct the jury that there is no evidence in this case
legally sufficient to entitle the plaintiff to recover, therefore,
the verdict of the jury must be for the defendants. (*Refused.*)

*Defendants' Second Prayer.*—The Court instructs the jury
that there is no evidence in this case legally sufficient to show
that the death of the deceased Adam J. Howell was due to
an accidental personal injury arising out of and in the course
of his employment, therefore, the verdict of the jury must
be for the defendants affirming the decision of the State In-
dustrial Accident Commission.    (*Refused.*)

*Defendants' Third Prayer.*—The Court instructs the jury
that the decision of the State Industrial Accident Commis-
sion dated December 20th, 1917, disallowing the claim of
Cora L. Howell for compensation in this case is *prima facie*

correct, therefore, the burden is upon the plaintiff, Cora L. Howell, to show by a preponderance of the evidence that said decision is not correct and if the minds of the jury are in a state of even balance as to the correctness or incorrectness of said decision, then the verdict of the jury must be for the defendants affirming said decision of the State Industrial Accident Commission. (*Refused.*)

*Defendants' Fourth Prayer.*—The Court instructs the jury that the State Industrial Accident Commission by its order dated December 20th, 1917, determined that the death of Adam J. Howell was not due to an accidental injury arising out of and in the course of his employment, and for that reason the said State Industrial Accident Commission disallowed the claim of the claimant in this case, Cora L. Howell, and that said decision is *prima facie* correct, and the burden is upon the said claimant, Cora L. Howell, to show by a preponderance of the evidence that the death of Adam J. Howell was due to an accidental injury arising out of and in the course of his employment, and if the minds of the jury are in a state of even balance as to whether or not the death of said Adam J. Howell was or was not due to an accidental injury arising out of and in the course of his employment, then the verdict of the jury must be for the defendants, affirming said order of the State Industrial Accident Commission. (*Granted.*)

*Defendants' Fifth Prayer.*—The Court instructs the jury that notwithstanding they may find from the evidence that Adam J. Howell, the deceased, met with an accident to his shoulder on or about March 4th, 1917, while employed by Stewart & Company, one of the defendants, and notwithstanding they may further find that the said Adam J. Howell died on or about the 26th day of May, 1917, nevertheless, the jury cannot find for the plaintiff, Cora L. Howell, his widow, unless the jury shall further find that the said Adam J. Howell's death was due to said injury arising on or about March 4th, 1917, and that of this there is no legally sufficient evidence. (*Refused.*)

*Defendants' Sixth Prayer.*—The Court instructs the jury that notwithstanding they may find from the evidence that Adam J. Howell, the deceased, met with an accident to his shoulder on or about March 4th, 1917, while in the employ of Stewart & Company, one of the defendants, and notwithstanding they may further find that the said Adam J. Howell died on or about the 26th day of May, 1917, nevertheless, the jury cannot find for the plaintiff, Cora L. Howell, widow of the said deceased, unless the jury shall further find that the said Adam J. Howell's death was a result of said injury. (*Granted.*)

*Defendants' Seventh Prayer.*—The Court instructs the jury that there is no evidence in this case legally sufficient to show that the death of Adam J. Howell was due to the injury which he sustained on or about March 4th, 1917, while in the employ of Stewart & Company; therefore, the verdict of the jury must be for the defendants, affirming the order of the State Industrial Accident Commission. (*Refused.*)

*Defendants' Eighth Prayer.*—The Court instructs the jury that the burden of proof is upon the plaintiff, Cora L. Howell, widow of Adam J. Howell, to prove by a preponderance of the evidence that the said Adam J. Howell's death on or about May 26th, 1917, was due to the accident which he sustained to his shoulder on or about March 4th, 1917, while in the employ of Stewart & Company, and if the minds of the jury are in a state of even balance as to whether or not said death was due to said injury, then the verdict of the jury must be for the defendants, affirming the order of the State Industrial Accident Commission. (*Granted.*)

*Defendants' Ninth Prayer.*—The defendants pray the Court to instruct the jury that medical expert testimony to the effect that the accident happening to Adam Howell on March 4th, 1917, might possibly have some connection with the death, is not equivalent to evidence that said accident either actually caused or hastened the death of Adam Howell, and they are further instructed that their verdict should be

for the defendant unless they are satisfied from all the testimony that said accident actually caused or hastened the death of Adam Howell. (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*George Weems Williams* and *D. Vernon Miller*, for the appellants.

*Robert Biggs* and *C. Arthur Eby*, for the appellees.

ADKINS, J., delivered the opinion of the Court.

Adam J. Howell, husband and father of appellees, while working for Stewart & Co. in their building at the corner of Howard and Lexington Streets, Baltimore, on March 4th, 1918, was struck by a heavy board which slipped while being drawn up by another workman. The board was caught by the foreman but he could not hold it and the end struck Howell in the chest between the shoulder and the heart. The immediate effect of the blow was to cause him to stop work that afternoon for a time variously estimated at from twenty minutes to two hours, at the expiration of which time he returned to work and continued to work the rest of that afternoon and through the night.

When he returned to his home on the morning after the accident he showed his wife the place where he was injured. There was a bruise on his left side just above the heart. He told her "he was in great pain, and he was very sick, and that he was injured, and that he never could get over it, he says 'I can never live.' "

The widow further testified that her husband was perfectly healthy prior to the accident, and was never sick; that he had never had any doctors and worked every day; that he was always strong and healthy, and could work in any kind of weather; never made any complaint, but would eat three meals a day and sleep well at night; that he had been well

all the time until he was injured, but after the injury he suffered a great deal; that he could not sleep at night at all; could not sit still or lie down but just a short time. This was all the time for the last week before he died; prior to the last week he suffered a great deal, could not sleep; his appetite was poor, and he was complaining all the time; that after the accident he went back to Stewart's and worked there for about two weeks, and after that worked a few days at other places, the last place being on Baltimore Street, where he was taken sick the last time. He died at the University Hospital on May 26th.

Mrs. Elizabeth Francois, a nurse at Stewart and Company's testified that Howell came to her before the accident "complaining of a pain in the side, right through his back and chest, and had a very bad cough"; he was coming up to her about three weeks before the accident.

Several doctors testified that Howell died of an aneurism of the aorta, and that in their opinion the aneurism was present before the accident, and that the accident had practically nothing whatever to do with the rupture so far as they could see from its description, and judging from the time of the accident to the time of death.

It is not perfectly clear, however, from their testimony that the blow might not have hastened the result.

Dr. L. B. Evans, who treated Howell after the accident, testified that his examination showed that the disease from which Howell died was not of long standing, but was the result of the blow which he had received on the chest; that it was a traumatic aneurism, assuming the correctness of the medical chart offered in evidence showing aortic aneurism to have been the cause of death.

The decision of the Industrial Accident Commission on practically the same testimony as was offered on the appeal to the Baltimore City Court was against the claimants, which decision was reversed by the City Court, from which this appeal was taken.

There are twelve bills of exceptions. The first six are to the overruling of objections to questions and refusal to strike out answers of the widow of Howell in regard to his feelings as expressed by him to her on his return home after the accident. We find no error in these rulings.

The seventh was to the following question propounded to Dr. L. B. Evans: "Keeping in mind your physical examination of Howell, when you saw him professionally, when you made the extensive physical examination of his body, and knowing now what the chart gives you of his death and the causes which led immediately to his death, I would like you to tell the jury whether or not in your opinion a traumatic aneurism could have resulted from that injury?"

Assuming the question to be open to the objection that it asks for a speculative opinion as to what *might have been* the effect of the injury rather than the doctor's judgment as to what its effect really was, such error was cured by the answer of the doctor which was as follows: "Of course, it was the only conclusion that could be drawn. The man gave a negative history of any of the diseases that produce pathological aneurisms. Therefore I could not assume that he had pathological aneurisms from diseases which did not exist, never existed. He gave the history of an injury which was capable of producing a traumatic aneurism by the force being transmitted to the chest in sufficient volume to produce rupture of one or more of the coats of the artery, giving rise to this particular type of aneurism, a traumatic aneurism. It was the only conclusion I could draw."

The answer shows that the doctor thought he was being asked what in his judgment caused the aneurism, and not what the question really asked. As understood by him the question was unobjectionable, and therefore there was no reversible error.

The eighth exception was to the question immediately following the above. It was leading, but did no harm as it practically embodied what the doctor had said in his previous

answer.  Of course the practice of repeating testimony of witnesses by counsel is not to be encouraged, but there was no reversible error here.

The tenth exception is to the refusal of the Court to permit a witness to answer a question, the substance of which was embraced in a later question, objection to which was overruled—consequently no harm was done.

The eleventh exception is to the overruling of defendants' objection to the following question asked Dr. L. B. Evans in rebuttal: "There seems to be, Doctor, some difference of opinion among the doctors here representing the defendants on the question.  Assume that the man did have a pre-existing aneurism and received the blow which Mr. Howell is said to have received, what effect would that blow have upon hastening the trouble with the patient?"

We think the objection was properly overruled.

This brings us to the twelfth exception, it being to the rulings of the Court on the prayers, all of which will be set out by the Reporter.

Plaintiff offered two, both of which were granted, and defendants nine, of which the fourth, sixth and eighth were granted and the first, second, third, fifth, seventh and ninth were refused.

The plaintiff's prayers were properly granted.  The only objection urged to them, apart from special exceptions which will be considered in connection with defendants' prayers, is that they assume certain facts.  We do not find this objection to have been well taken.  Defendants' first, second, fifth and seventh prayers ask for an instructed verdict in favor of defendants on the following grounds:

That there is no evidence legally sufficient to entitle plaintiff to recover.

That there is no evidence legally sufficient to show that the death of the deceased was due to an accidental pectoral injury arising out of and in the course of his employment.

That there is no evidence legally sufficient to show that the death of the deceased was due to an injury.

It is difficult to understand how these prayers could have been granted, or the special exceptions to plaintiff's prayers could have been sustained, without entirely disregarding the positive testimony of the widow and of Dr. L. B. Evans and of Dr. Kirby, all of which, of course, must be taken to be true, and as if uncontradicted, in considering these prayers and exceptions. Dr. Evans' testimony and that of the widow has already been referred to. Dr. Kirby testified, in answer to the question: "Assuming that this aneurism was of old standing and progressive, what effect, if any, would the blow upon the shoulder and upper part of the chest likely have upon that in hastening the time of death?" "It would increase the existing conditions if the blow was sufficient to cause that change." There was abundance of testimony as to the force of the blow.

It will be noted that the testimony of Dr. Evans is, not that death *might have been* due to the blow, but that in his opinion it *was* due to the blow.

Also that the testimony of Dr. Kirby is, not that the blow *might have* increased existing conditions, but that it *would* increase them if of sufficient force.

This testimony takes this case out of the principle governing the following English cases relied on by appellants, viz: *Barnabas* v. *Beisham Colliery Co.*, 3 Butterworth's Workmen's Compensation Cases, 216; *Maxwell* v. *Ruabon Coal and Coke Co., Ltd.*, 10 B. W. C. C. 138; *Hawkins* v. *Powells Tillery Steam Coal Co., Ltd.* (1911), 1 K. B. 988.

The principle underlying all the above cases is that it is not sufficient to show that death *may have* resulted from the accident; or that the accident was one of *several possible* causes of death.

On a careful examination of the other cases cited by appellants we find:

All that *Knight's Case,* 231 Mass. 142, decides is that there was evidence from which the lower Court could find as it did, and that the appellate Court could not say as a matter of law that the finding of the board was unwarranted.

*Taylor* v. *Bolckow, Vaughan & Co., Ltd.,* 5 B. W. C. C.
130, decides nothing except that the reasons given by the
trial judge for his judgment are not in accordance with the
evidence. The case was sent back for another trial.

The facts in *Palon* v. *William Dixon, Ltd.,* 6 B. W. C. C.
882, are different, and the decision has no bearing on the
case at bar.

*Clover, Clayton & Co.* v. *Hughes,* 3 B. W. C. C. 275, is
authority for the submission of the present case to the jury.
See also *Fisher's Case,* 220 Mass. 581; *Madden's Case,* 222
Mass. 487.

We find no error in the ruling on these prayers and on the
special exceptions to plaintiff's prayers.

Defendant's third prayer asserts the proposition that the
burden is upon the plaintiff to show that the decision of the
Industrial Accident Commission is not correct.

The form of this prayer was disapproved in the case of
*Jewell Tea Co.* v. *Weber,* 132 Md. 178, though the granting
of the prayer was held not to have been a reversible error.
It was there said by JUDGE THOMAS, speaking for the Court,
referring to a similar prayer: "While it states a correct
legal proposition, and could not have misled the jury in this
case, we cannot approve the form adopted. Prayers should
instruct the jury in regard to the law applicable to certain
facts to be found by them. An appeal from a decision of
the Commission may present questions of law as well as ques-
tions of fact, and an instruction as to the burden of proof
should be confined to the issues of fact to be decided by the
jury."

We think defendants' fourth prayer, which was granted,
gives the defendants at least as much as they were entitled
to in the matter of burden of proof.

As we understand Section 56 of the Workmen's Compen-
sation Law (Code, Art. 101, Sec. 56), it does not mean that
there must be additional testimony offered on appeal from
the Commission; or that even as much testimony need be

offered by the party taking the appeal as he produced before the Commission in order to discharge the burden put upon him by that section. But it simply puts the burden of proof upon the party taking the appeal, whether he be plaintiff or defendant. In other words it establishes no new rule when the plaintiff happens to be the party appealing, as the burden was always upon the plaintiff to prove his case. But it shifts the burden from the plaintiff to the defendant where the defendant loses before the Commission and desires to appeal from its decision, requiring the defendant in such a case to satisfy the jury by a preponderance of testimony that the plaintiff is not entitled to the award made by the Commission.

This prayer was properly refused.

The ninth prayer asks the Court to instruct the jury as to the comparative value of testimony; or as to a proper differentiation between certain kinds of testimony. As a rule such prayers should not be granted; at any rate there was no error in refusing an instruction of that sort in this case as the granted prayers fully and fairly instruct the jury as to the law of the case.

Finding no reversible error in any of the rulings of the trial Court, the judgment will be affirmed.

*Judgment affirmed, with costs, to appellee.*