PRISCILLA TODD *vs.* EASTON FURNITURE COMPANY ET AL.

*Workmen's Compensation—Course of Employment—Murder of Night Watchman.*

Where a night watchman was killed in the course of his rounds by one with whom he had previously quarreled, *held* that it was properly a question for the jury whether his death "arose out of and in the course of his employment," the evidence justifying the inference that increased danger of injury by ill-disposed persons was an incident of the special conditions of his service as night watchman.　　　　pp. 354-358

The conclusion of the State Industrial Accident Commission, that the injury for which claim is made arose out of and in the course of the employment, places upon the party appealing from its decision the burden of proving the contrary on the trial in the court to which the appeal is taken.　　　p. 359

The trial court is not authorized to withdraw a case from the jury at the instance of a party appealing from the Industrial Accident Commission, unless the facts have been ascertained and agreed upon by the parties, or are undisputed and there is no dispute as to the inferences to be drawn therefrom.　　　　　　　　　　　p. 359

*Decided February 6th, 1925.*

Appeal from the Circuit Court for Talbot County (KEAT-ING, J.).

Claim by Priscilla Todd under the Workmen's Compensation Act, against the Easton Furniture Manufacturing Company, employer, and the American Mutual Liability Insurance Company, insurer, on account of the death of the claimant's husband. From a judgment reversing an award of the Industrial Accident Commission in favor of claimant, the latter appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, and WALSH, JJ.

*Webster S. Blades,* with whom were *Charles J. Butler* and *Blades, Rosenfeld & Frederick* on the brief, for the appellant.

*Walter L. Clark,* with whom were *Bowie & Clark* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The appellant is the widow of Charles W. Todd, who was murdered while engaged in the performance of his duty as night watchman at the appellee's furniture plant. Compensation was awarded the widow by the State Industrial Accident Commission, in consequence of its determination that the death of her husband "arose out of and in the course of his employment." On appeal by the employer to the Circuit Court for Talbot County, the order of the commission was reversed, in pursuance of a directed verdict of the jury by which submitted issues of fact, as to whether the death of Todd resulted from an injury which arose out of and in the course of his employment, were answered in the negative. The instruction requiring such a verdict was granted upon the stated ground that, according to the uncontradicted evidence, "the deceased employee was intentionally killed by Thomas Boardley, not a co-employee, in a quarrel over a dog."

It appears from the record that about half past six o'clock on the evening of May 16th, 1923, Todd, who had gone on duty for the night at half past five, was attacked by Boardley because of the latter's suspicion, apparently unfounded, that Todd had poisoned his dog, but the intervention of other persons, to whom Todd appealed for protection, prevented the continuance of the assault. Boardley went away threatening further violence against Todd, and about half an hour later was seen going towards the furniture factory, and was shortly afterwards observed coming from that direction, when he was heard to say, "I have got the —— ——." The bleeding and lifeless body of Todd was found on the factory premises at a point in the course of his customary passage from one of the buildings to another in the discharge of his duty as a watchman. His clock, suspended from his neck, registered seven minutes past seven as the time of his visit to the building from which he was proceeding when he was killed. It was between half past seven and eight o'clock when his dead body was discovered. His lantern was lying near him on the ground. There was no evidence of any quarrel or fight at the time of the homicide. It was stipulated in the record that Boardley was prosecuted for the murder of Todd, was found guilty of murder in the first degree, and was sentenced to imprisonment for life.

The question we are to decide is whether, in view of the uncontradicted evidence tending to prove that Todd was attacked and murdered while performing his regular duty as a night watchman, and that the motive for the murder was personal animosity, the court below was justified in directing a verdict that his fatal injury did not arise out of or in the course of his employment in the appellee's service. In deciding that question we must consider the effect given by statute to the determination of the State Industrial Accident Commission upon the issue of fact presented in the circuit court on appeal.

The Workmen's Compensation Law (Code, art. 101, sec. 56), provides that, upon the hearing of any appeal from an order of the commission, any issue of fact involved in the

case, shall, on motion of either party be submitted to the jury. By the same section it is provided: "In all court proceedings under or pursuant to this article, the decision of the commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same." This provision was held not to prevent the court from deciding the issue as one of law in a case submitted to the court, sitting as a jury, upon an agreed statement of facts. *Harrison v. Central Construction Co.*, 135 Md. 170. In the course of the opinion delivered by Judge Burke in the case just cited it was said: "The question as to whether an injury arose out of or in the course of the employment is ordinarily, like negligence or want of probable cause, a mixed question of law and fact; but when the facts have been ascertained and agreed upon by the parties, or are undisputed and there is no dispute as to the inferences to be drawn from the facts, the question becomes one of law and may be decided by the court."

In that case it was stated in the agreement as to the facts that the employee claiming compensation was injured while on his way from Baltimore, where he lived, to his work for a construction company engaged in building Edgewood Arsenal for the United States Government at Magnolia, Maryland; that he regularly traveled without charge on a work train provided by the Pennsylvania Railroad Company under an agreement with the Government; that the claimant received no pay for the usual time of traveling to the place of work; and that he was injured while boarding a train to which it was necessary for him to be transferred on his way to Magnolia because of the fact that the train he first entered, under mistaken directions, did not stop at that point. To the stipulated facts this Court applied the rule that an injury to an employee is to be regarded as having arisen out of and in the course of his employment if it occurs while he is proceeding to the place of work in compliance with a contract of employment providing for his transportation. The case as presented by agreement admitted of no dispute as to

any inferences of fact and simply required a decision as to whether a particular rule of law should be applied.

The present case was not submitted to the court upon an agreed statement of facts. It was tried before a jury upon the testimony of witnesses, and while the evidence was uncontradicted, it admitted of an inference of fact opposed to that embodied in the instruction by which the verdict of the jury was controlled. The instruction stated that the watchman was killed "in a quarrel over a dog," but the proof does not prevent the inference that he may have been attacked suddenly and without warning as he emerged from one of the buildings which it was necessary for him to visit and guard. If he was aware of the approach and hostile purpose of the assailant, the duty which he had assumed "to keep off all trespassers" might have deterred him from seeking safety in flight. The conditions under which he was working when he lost his life were such as to place him at a special disadvantage with respect to any trespasser who designed to do him injury. As a night watchman making periodical rounds, his movements could be readily followed by one familiar with his duties. While guarding his employer's property he was himself unprotected. The assault which caused his death might have been committed elsewhere, but the attack could be made with greater assurance of success, and of safety for the assassin, if planned for a time when the intended victim was performing his lonely duty and was without opportunity to obtain assistance. The inference that increased danger of injury by ill-disposed persons was an incident of the special conditions of the night watchman's service could be drawn from the facts proved by the evidence. Upon the basis of such an inference the jury might have concluded, if the case had not been withdrawn from their consideration, that the injury inflicted upon the deceased employee arose out of the service in which he was engaged.

There has been decisions sustaining claims under workmen's compensation laws in cases where: a night watchman was killed on his employer's premises by unknown persons whose motive was to rob him of his money, *Vivier v. Lum-*

*bermen's Indem. Exch.* (Tex.), 250 S. W. 417; an employee while performing his duty of making a fire in an engine at night in an isolated locality was shot and killed by persons whose identity was not discovered, *Dyer v. Rapides Lumber Co.,* 154 La. 1091; a head waiter of a hotel was killed on the premises by a waiter whom he had discharged, *Cranney's Case,* 232 Mass. 149; a road construction foreman was accidentally killed by a hunter, *Arnested v. McNicholas,* 223 Mich. 488; a fatal assault on a schoolmaster was made by unruly pupils, *Trim Joint District School Board v. Kelly* (H. L.) 1914, App. Cas. 667; a bar tender was shot by customers during a dispute as to the price of liquors which they had purchased, *Emery v. Slavonian, etc. Union,* 93 N. J. L. 282; the foreman of a lodging camp was killed by a discharged employee with whom he had quarreled, *Stertz v. Industrial Ins. Co.,* 91 Wash. 588; a night watchman, employed to protect buildings of his employer's patrons against burglary, while patrolling the street for that purpose, was accidentally shot by a police officer pursuing burglars who had not entered a building which the watchman was protecting, *Heidemann v. Amer. Dist. Telegraph Co.,* 230 N. Y. 305; a workman, who had orders to protect his employer's property from trespassers, was injured by a shot from an air gun playfully discharged in his direction by one of a group of boys whom he had driven away from the vicinity of the property because of similar acts, *Munro v. Williams,* 94 Conn. 377; an engineer was struck by a stone wilfully thrown by a boy from an overhead bridge, *Challis v. London & Southwestern Ry. Co.* (1905), 2 K. B. 154.

In some of the cases cited, the injury to the employee had an apparent relation to conduct on his part incident to the service he was rendering to the employer, but in others the decisions were based simply upon the fact that the employment involved an increased exposure to the injuries sustained. For example, in *Vivier v. Lumbermen's Indem. Exch., supra,* the Commission of Appeals of Texas, in reversing a judgment of the Court of Civil Appeals, said: "In this case the deceased was employed as a night watchman.

During the long hours of the night his was the duty of protecting his employer's property from fire and depredation. If there was no risk, why the employment? * * * By reason of the performance of his duty, deceased was placed in a position which contributed to the effectuation of the design of the assassin, and furnished the opportunity for injury or death that would not have existed but by reason of his situation in the performance of his duty." In *Dyer v. Rapides Lumber Co.; supra,* the Supreme Court of Louisiana said: "Now in the case before us the Court of Appeals has well reasoned that the conditions under which defendant worked (at night and in an isolated spot) exposed him to easy attack. This was the direct and necessary result of his employment; and the indisputable fact that he was thus exposed by the nature of his employment cannot be minimized by imagining that the (supposed) assassin might have attacked him even in the day light or at his home. Common experience teaches us that crimes are more common in darkness than in light, in isolated than in frequented places * * *." The Court of Appeals of New York, in *Heidemann v. Amer. Dist. Telegraph Co., supra,* disposing of the contention that the death of Heidemann was unrelated to his employment, because the burglars who were being pursued by the policemen who accidentally shot him had not entered a building which he was employed to protect, said: "The incidents of service may not be limited so narrowly. It was not only in repelling attack upon the property of his employer's patrons that Heidemann had to face the perils of his calling. He faced them at all times while abroad upon his duties. His employment put him upon the street at night, and put him there in search of trouble. If shots were heard, or cries of distress, or the sounds of an affray, others might run to shelter. His duty was to search the cause. The disturbance might have its origin in the homes and stores and offices intrusted to his care. He could not know unless he looked. Crimes of violence flourish under cover of the night and darkness. That was the very reason why Heidemann was there to guard."

On this appeal we have no occasion to render a decision as to whether the injury received by the employee arose out of and in the course of his employment, but our duty is simply to decide whether the jury should have been given the opportunity to determine that question upon the evidence presented. The conclusion of the State Industrial Accident Commission that the injury arose out of and in the course of the employment placed upon the party appealing from its decision the burden of proving the contrary at the trial in the circuit court. *Stewart & Co. v. Howell,* 136 Md. 423. In view of the Code provisions to that effect it has been uniformly held, except under such conditions as existed in the case of *Harrison v. Central Construction Company, supra,* that the trial court is not authorized to withdraw a case from the jury at the instance of a party appealing from the Commission's determination. *Jewell Tea Co. v. Weber,* 132 Md. 183; *Coastwise Shipbuilding Co. v. Tolson,* 132 Md. 203; *Beasman v. Butler,* 133 Md. 382; *Thistle Mills v. Sparks,* 137 Md. 117; *Bell v. Steen,* 137 Md. 388; *Taylor v. Ramsay Co.,* 139 Md. 113; and *Baltimore Dry Docks Co. v. Hoffman,* 142 Md. 73. In the cases last cited, the issues, as presented upon the proof, could not properly be determined against the claimants as questions of law. Those cases, therefore, were not within the principle stated in *Harrison v. Central Construction Co., supra.* The rule as to the burden of proof in such cases is not incompatible with the recognized rule that the issue may be decided as one of law where the facts are agreed upon, or proved without contradiction, and there is no ground of dispute as to any material inference of fact. In our opinion, no occasion for the application of the latter rule exists in the present case.

The decisions in other jurisdictions cited by the appellee need not be reviewed. They were based upon statutory or other conditions materially different from those by which we are governed in deciding this appeal.

*Judgment reversed, with costs, and new trial awarded.*