## ATLANTIC REFINING COMPANY *v.* CATHERINE ELIZABETH FORRESTER, Widow

[No. 28, January Term, 1942.]

518

*Decided April 22, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Robert D. Bartlett,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellant.

*James O. Scrimger* and *Paul Berman,* with whom was *Eugene A. Alexander III* on the brief, for the appellee.

FORSYTHE, J., delivered the opinion of the Court.

In this case the appeal is from a judgment of the Baltimore City Court, which reversed an order of the State Industrial Accident Commission, disallowing the claim of Catherine E. Forrester, widow of Henry Forrester, deceased, against the Atlantic Refining Company, employer and self insurer.

The claim arose out of the death of the said Henry Forrester, an employee of the Atlantic Refining Company on the 11th day of December, 1940. The claim was heard by the commission and disallowed. The claimant appealed to the Baltimore City Court, and at the trial the single issue presented to the jury was: "Did Henry Forrester, the husband of the claimant, receive, on or about the 11th day of December, 1940, an accidental injury arising out of and in the course of his employment with the Atlantic Refining Company, from which injury he died?" The jury found in favor of the claimant on that issue, and the court entered a judgment for the claimant for costs, reversing the order of the commission. From that judgment the employer appealed to this court.

The first exception presented on this appeal is to the refusal of the trial court to grant the appellant's A and B prayers. Both of those prayers asked for a directed verdict. The A prayer is "that under the pleadings in this case there is no legally sufficient evidence," etc., and the B prayer is that the claimant "has offered no

evidence legally sufficient to entitle her to recover under the issues submitted," etc.

The second exception is to the refusal of the court to grant appellant's motion for a judgment *non obstante veredicto.*

The facts in the case, under which the accident resulting in the death of Forrester occurred, and the facts concerning the nature of his employment, his duties and activities are undisputed. He seems to have been a handyman, going from one thing to another as assigned by his employer. Forrester refers to himself, in his reports, as "Lubrication Man" and "Retail Merchandiser," and his wife said, "He was more or less classed as a sales promoter and salesman and worked all over the State of Maryland. He was home about 40% of the time and out of town 60% of the time."

On December 9, 1940, Forrester was ordered to Aberdeen for the week. His duties while there, according to the testimony of Quay, who had him sent, were to assist Chester A. Roberts, who was opening a new filling station, in any way he could "to get the station in a presentable condition so it would be more inviting to customers; and when that had been completed to help Roberts in other phases of the company's instructions which would enable Roberts to get more business." After the station had been cleaned up, Forrester was to inform Roberts about different tools that were for sale, and to help in his solicitation for dealers. Quay's instructions to Forrester were embodied in a note offered in evidence, as follows: "Roberts is now operating the Kennedy station, as you can see there is much to be done in instruction and cleaning. I am trusting the job to you and sincerely hope we have a snappy station by the end of the week. Be critical in your help to the operators and make them earn 100% grades. Both are capable and willing. Kindly keep this form, fill in dealer study at end of week and make notes below of daily work, return to me." That note was signed by Quay, who was the salesman of the appellant for that

locality, and whose duties were "to sell Atlantic Refining Company's products; to instruct the dealers how to take care of the business and promote the company's retail outlets and how to be more successful." The witness Bishop, who is the manager for the Atlantic Refining Company for the district of Maryland, testified "that Forrester worked under him. That the office sent Forrester to Aberdeen for the week of December 9, 1940."

There is testimony to the effect that when Forrester was "out of town" on work for the appellant company he was reimbursed for his expenses, which included room, board, laundry and expenses for meals furnished by him to dealers or helpers.

On the week of December 9, 1940, Forrester arrived at Aberdeen on Monday, about 11 o'clock A. M. He secured a room, and at 12 o'clock noon reported to Roberts at the filling station. Both men went to the Mayflower Restaurant, about one block away, for lunch. After returning to the station, Forrester began to work in helping to clean up the lubricating room. They worked until 6 o'clock. On Tuesday Forrester worked at the station from 8.15 A. M. to 10 P. M. During that time Forrester and Roberts talked about "event days." "There was to have been two event days that week with the permission of Mr. Quay * * * the event days were to be for lubrication and tire sales, and they were to go out and do some soliciting." After closing, about 10 o'clock P. M., Forrester explained to Roberts the method of bookkeeping, which kept them at the filling station until 11 o'clock.

After closing at that hour, Roberts and Forrester decided "to get a few beers," and Roberts took Forrester in a small truck to "Jack's Place," which was operated by a women friend of Roberts. While there, and on the way, Forrester was trying to persuade Roberts to buy a battery charger, a contrivance sold by the appellant company. Also, while at "Jack's Place," Forrester invited the woman in charge to bring her automobile to the filling station on

"event day" for lubrication. After spending about two hours there, sometime after 1 o'clock A. M., Roberts and Forrester decided to go to the Mayflower Restaurant, which was about a mile in the other direction from the filling station, for sandwiches and coffee. Finding the Mayflower closed, Roberts, who was driving the truck, testified he "turned to the left and went over on the northbound traffic lane and headed toward the all-night diner" which was directly next to his filling station, and in the same block where Forrester was staying. "* * * that when they were about 150 feet from the station, Forrester saw and mentioned about the lighted diner and just then the witness (Roberts) drove into a parked truck," with the result that Forrester was killed. Roberts also testified that on the way to the Mayflower "we were talking about what we would do the latter part of the week, what things we would take up, * * * things we saw that would promote the business, * * * he was to go from door to door on solicitation business for the event days."

The testimony has been set out at some length since the appellant's A and B prayers asked for a directed verdict because of the lack of evidence legally sufficient to entitle the claimant to recover.

The appellant's prayers were offered at the close of all of the testimony, and after refusing to grant them, the court delivered an oral charge, consuming about one-half of an hour. The oral charge was taken by the court stenographer, and transcribed, but was lost. Exceptions were noted to the charge by both sides, and the court was asked to repeat it for the record. That the court declined to do, and we, of course, cannot review it.

The first question before us on this appeal is the sufficiency of the evidence to reverse the conclusion of the State Industrial Accident Commission. The decision of the commission that the accident which resulted in Forrester's death did not arise out of and in the course of his employment by the appellant company, placed upon the claimant appealing from that decision the burden of

proving at the trial in the Baltimore City Court the contrary.

The statute, Code, 1939, Art. 101, Sec. 70, expressly declares that on appeal from the decision of the State Industrial Accident Commission the decision of the commission shall be presumed as *prima facie* correct, and the burden of proof is upon the party attacking it. *Jewel Tea Company v. Weber,* 132 Md. 178, 181, 103 A. 476; *Stewart & Co. v. Howell,* 136 Md. 423, 110 A. 899; *Todd v. Easton Furniture Mfg. Co.,* 147 Md. 352, 359, 128 A. 42.

If there is any rule well established in cases like this, it is that where there is any question of fact involved, the parties have a right to have it submitted to a jury. *Frazier & Son v. Leas,* 127 Md. 572, 96 A. 764. The court cannot assume the existence of a fact, and no action of the court should control the exercise of the jury's admitted right to weigh the evidence, no matter how strong and convincing the proof may be. *Jewel Tea Co. v. Weber, supra; Baltimore & Ohio R. Co. v. State, to Use of Hendricks,* 104 Md. 76, 64 A. 304. The decision of a fact by a jury is not reviewable by the Court of Appeals. *Harris v. R. P. Dobson & Co.,* 150 Md. 71, 73, 132 A. 374.

But, in cases where the facts are agreed upon, or proved without contradiction, and there is no dispute as to any material inference of fact, the court may decide the issue as one of law. *Harrison v. Central Construction Co.,* 135 Md. 170, 180, 108 A. 874; *Beasman v. Butler,* 133 Md. 382, 387, 105 A. 409; *Schemmel v. T. B. Gatch & Sons, etc., Co.,* 164 Md. 671, at page 675, 166 A. 39. In the latter case, 164 Md. at page 682, 166 A. at page 43, in dealing with the question of whether the accident arose "out of the employment," this court said: "Much has been said, but little that is of value added to the statement in *McNicol's Case,* 215 Mass. 497, 102 N. E. N. E. 697, *L. A. R.* 1916A, 306, that an injury 'arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circum-

stances, a casual connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence'," citing a number of cases.

In this case there is no dispute about the facts and circumstances under which the accident to Forrester occurred. There is no conflict or contradiction in the evidence, and the rule above cited applies here with full force and effect. The only evidence that Forrester was acting in the course of his employment after 11 o'clock on the night he was killed, is that he invited a customer to come to the filling station, and talked to Roberts about a battery charger, and plans for the week. That was more or less casual, and interspersed between drinking beer, fixing a music box and driving from one place to another for refreshments.

The appellee relied with much comfort upon the opinion of this court in *Boteler v. Gardiner-Buick Co.,* 164 Md. 478, 482, 165 A. 611, 613, in support of the contention that Forrester was injured while in the course of his employment. In that case it is said; * * * "it is not necessary that there should exist a direct, active or physical connection between the act causing the accident and the

employment, but it is sufficient if the accident, without having for its cause the serious and willful misconduct of the servant, arises *directly out of circumstances which the servant had to encounter because of his special exposure to risks that, although external, were incidental to his employment."* (Italics supplied.) But, in that case the court was dealing with a situation where the injured salesman "was at the place of the accident on his master's business, and was there injured while engaged in doing a service which was for his master's benefit, and which was reasonably required of him in the performance of the duties of his employment in the special circumstances." That was a far different state of facts from those in this case. It was the duty of the salesman to be in the room, and on the premises of the employer at the very time he was injured. He had not finished his day's work and set out in quest of amusement and refreshments. In the case now before us the employee was directed to do a special work, at a particular place, and where he was not subject to the hazard of an accident such as resulted in his death. The test is clearly stated in the quotation above from the Schemmel case, "excludes an injury which cannot farily be traced to the employment as a contributing proximate cause * * *. The causative danger must be peculiar to the work and not common to the neighborhood."

A situation similar to the instant case was presented by the facts in *Paulin v. Williams & Company*, 122 Pa. Super. 462, 186 A. 415, 416, and *Knowles v. Parker Wylie Carpet Company*, 129 Pa. Super. 257, 195 A. 445. In Paulin's case the salesman was furnished with a car to cover his territory in calling on customers. On the occasion of his death he had taken his brother to call on a customer. After leaving the customer they went to a restaurant. About an hour later both were killed in an automobile accident. Paulin's widow was allowed compensation, but in reversing that judgment the court said: "To be entitled to compensation for injuries received when off the premises of the employer, the em-

ployee must be actually engaged in furthering the business of the employer. * * * Whether, on the state of facts found, deceased was killed in the course of employment is a question of law." [122 Pa. Super. 462, 186 A. 417.] In Knowles' case, after finishing the day's work of calling on customers, Knowles went with a customer to an inn for dinner. They left the inn accompanied by some women intending to leave them at their homes. Knowles was killed before reaching his hotel. The award of compensation was reversed on the ground that the accident did not rise out of and in the course of his employment.

It was suggested that even if Forrester, on the night he was killed, was on a mission of his own, he also was engaged in soliciting business for his employer. In dealing with that state of facts, it is stated in 71 *C. J., Workmen's Compensation,* Sec. 420, c. p. 675: "In determining the question of the employer's liability for an injury resulting on a trip undertaken for personal as well as business reasons, it is essential to determine whether, at the outset, the trip in question was that of the employer, or that of the employee. If it is the employer's trip, the employee is engaged in his employer's business and acting within the scope of his employment while going to and returning from the terminus of the trip. If it is the employee's trip, he is not within the scope of his employment while en route to, or returning from, the terminus of his trip, but detours made in such case for the purpose of dispatching business for his employer are within the scope of his employment. The mission for the employer must be the major factor or, at least, a concurrent cause of the journey, and, if it is merely incidental to what the employee was doing for his own benefit, the injury does not arise out of or in the course of the employment."

In dealing with the question of whether a trip was that of the employer, or of the employee, the court in *Barragar v. Industrial Commission,* 205 Wis. 550, 554, 238 N. W. 368, 370, 78 *A. L. R.* 679, 682, quoting from *Marks'*

*Dependents v. Gray,* 251 N. Y. 90, 167 N. E. 181, said: "The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

From the undisputed evidence in the instant case, it is clear that, at the outset, the trip was primarily for the benefit of the employee, and would not have been taken at that hour of the night merely for the purpose of selling a battery charger, or to invite customers to visit the filling station. Forrester's employment for the week at Roberts' filling station did not require him to be on the highway in the middle of the night and to expose himself to its risks. According to the test, as above stated, and under the undisputed facts, it must be held that Forrester was not placed on the highway, on the night he received his fatal injury, by force of his duty to his employer, and that the risk of travel on that night was his own. This case comes clearly within the ruling of *Harrison v. Central Const. Co., supra,* as a question of law to be decided by the court.

It was contended by the appellee that the prayers are not in proper form as required by the new Gen. Rules of Practice and Procedure, Part III, Trials, Rule 4, in that they do not "state the grounds therefor," and consequently the trial court properly refused them.

Both of the prayers asked for a directed verdict, and while they may not comply with the rule in stating wherein the evidence was insufficient, in a case like this, in which but a single issue was presented, and that a question of law, it was not necessary for the prayers to refer specifically to the lack of evidence on that issue.

After the verdict, and entry of judgment thereon, the motion for judgment notwithstanding the verdict was duly made in accordance with Gen. Rules of Practice and Procedure, 1941, Part III, Trials, Rule 8, which provides: "Whenever a motion for a directed verdict made by a party at the close of all of the evidence is denied, then (1) within three days after the reception of the verdict, such party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict," etc.

The only requirement demanded by the rule, before a party may have the right to move for judgment notwithstanding the verdict, is, that a preliminary motion for a directed verdict must have been denied. There is no provision in the rule requiring the motion for a directed verdict be in correct technical form. The oral charge must correctly instruct the jury regardless of whether the prayer for a directed verdict is in acceptable form, especially when the question is one of law. It does not necessarily follow that a question of law can be submitted to a jury merely because the prayer may be defective.

It does not appear in the record that in submitting this case to the jury, the trial judge reserved a decision on the question raised by the prayers. But that is not necessary. The trial court is deemed to have submitted the case subject to later determination of legal questions raised by a motion for a directed verdict.

The rule above quoted is for all practical purposes similar to the Federal Rules of Civil Procedure, Rule 50 (b), 28 U. S. C. A. following Section 723c, and in dealing with a somewhat similar situation as that now before us, the court, in *Montgomery Ward & Co. v. Duncan*, 311 U. S. 243, 250, 61 S. Ct. 189, 194, 85 L. Ed. 147, said the rule "merely renders unnecessary a request for reservation of the question of law or a formal reservation." In the annotations to the above case at pages 164 and 165 of 85 L. Ed., apparently quoting from *Lowden v.*

*Denton,* 110 F. 2d 274, it is said: "The trial court is now deemed to have submitted the action to the jury, subject to a later determination of the legal question raised by the motion for a directed verdict, and therefore no express reservation is necessary."

For the refusal, in this case, to direct a verdict for the appellant and the overruling of the motion for judgment *non obstante veredicto,* the judgment appealed from must be reversed.

> *Judgment reversed. Judgment for the appellant for costs below. Costs of this appeal to be paid by the appellee.*