17 F.3d 1433
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Lois HAMILTON, Individually and Personal Representative of
the Estate of Harry Hamilton, Deceased, Plaintiff-Appellant,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellee.
 No. 92-1054.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1993.
Decided Feb. 22, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., Chief District Judge. (CA-88-1533-B)
 Philip Helm Armstrong (Ronald A. Rubloff, on brief), Heeney, Armstrong & Heeney, Rockville, MD, for appellant.
 Peter Frederick Axelrad (Charles S. Fax, Bryan D. Botlon, Shapiro & Olander, on brief), Baltimore, MD, for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 
 OPINION
 ERVIN
 
 1
 Plaintiff Lois Hamilton ("Mrs. Hamilton") filed suit against Prudential Insurance Company of America ("Prudential") to establish her entitlement to benefits under two insurance policies under which her deceased husband, Officer Harry Hamilton ("Hamilton"), was covered as a Montgomery County police officer.[1] After a two day bench trial, the district court denied her claims for both Employee Business Trip Accidental Death and Dismemberment ("Business Trip") benefits and service-related Employee Accidental Death and Dismemberment ("Accidental Death") benefits. Mrs. Hamilton appeals the district court's judgment. The issues before us are whether the circumstances surrounding Hamilton's death fall within the coverage provisions of the Business Trip policy and the Accidental Death policy. Finding that the circumstances surrounding Hamilton's death do not fall within the coverage provisions of the two policies at issue, we affirm the district court's judgment denying Mrs. Hamilton's claims.
 
 I.
 
 2
 In December of 1986, Hamilton was employed as a Montgomery County, Maryland, police officer and was insured under a group insurance policy issued to Montgomery County employees by Prudential. At the time of his death, Hamilton was assigned to the Montgomery County Police Academy (the "Academy"), located in Rockville, Maryland, approximately one mile from the police department headquarters ("Headquarters"). Both the Academy and Headquarters are located in Montgomery County.
 
 
 3
 Hamilton commuted each day from his home in Carroll County, Maryland, to the Academy in Montgomery County. His hours of duty were from 7:15 a.m. to 3:30 p.m. During the work week beginning Monday, December 22, 1986, however, the Academy operated on a four day, ten hour work week to accommodate the Christmas holiday. During that week, a typical work day commenced at 6:45 a.m. At the Academy, Hamilton taught classes in traffic enforcement and accident investigation. His classes did not begin before 9:30 a.m.
 
 
 4
 On December 23, the day before his death, Hamilton mentioned to Lt. Randall Crittenden, his supervisor, that he would be coming in early the next day to photocopy some materials for his 9:30 class. Because the Academy's small copier was not adequate for large copying jobs, Crittenden suggested that Hamilton copy the materials at Headquarters where there was a faster, more efficient photocopier. It was standard practice at the Academy to take large jobs to Headquarters for copying. The copier at Headquarters was available for the officers' use 24 hours a day.
 
 
 5
 That evening, Hamilton told his wife that he "had to go to Police Headquarters to take care of some work ... before he reported for duty at the Academy .... [and] that he would be getting up earlier than normal in the morning and leaving early." Hamilton's normal commute to work in Montgomery County from his home in Carroll County took 45 minutes to one hour.
 
 
 6
 Beginning around 3:30 a.m. on December 24, 1986, freezing rain covered the streets and the roads became hazardous. Hamilton left home before 5:00 a.m., which was earlier than his normal departure time. Shortly thereafter, he lost control of his pickup truck in Carroll County, crashed into a guardrail, and was killed instantly. At the time of the accident, he was driving along a route that would have led either to the Academy or Headquarters.
 
 
 7
 At trial, the district court found the following facts to be supported by a preponderance of the evidence:
 
 
 8
 1) at the time of his death, Hamilton was on his way to police Headquarters to photocopy materials for his class; and
 
 
 9
 2) Hamilton was not required to accomplish the copying on the morning of his death, but rather could have performed the copying at any time convenient to him and consistent with his teaching responsibilities.
 
 
 10
 The district court found as a matter of law that under the circumstances of Hamilton's death, there was no coverage under the Business Trip or the Service-Related Accidental Death policies issued by Prudential, and denied Mrs. Hamilton's claims.
 
 II.
 A.
 
 11
 Under the Business Trip policy, an employee is entitled to receive benefits for accidental death or bodily injury suffered while on a business trip. "Business trip" is defined as follows:
 
 
 12
 An Employee will be considered to be on a Business Trip while he is on an assignment authorized by his Employer, at the expense of his Employer and primarily devoted to furthering his Employer's business interests, but not while he is engaging in any activity in connection with a vacation or leave of absence. An Employee will not be considered to be on a Business Trip if his assignment does not require him to travel beyond the corporate limits of Montgomery County, Maryland.
 
 
 13
 A Business Trip will be considered to begin when the Employee leaves his permanent residence or when he leaves his regular place of employment, whichever occurs later, for the purpose of a Business Trip. The Business Trip will be considered to end when the Employee arrives at his permanent residence or when he arrives at his regular place of employment whichever occurs earlier. An Employee will not be considered on a Business Trip while he is traveling between his permanent residence and his regular place of employment.
 
 
 14
 (Emphasis added).
 
 
 15
 The parties dispute whether the final sentence of the first paragraph, that "an employee will not be considered to be on a Business trip if his assignment does not require him to travel beyond the corporate limits of Montgomery County, Maryland," operates to exclude the circumstances surrounding Hamilton's death from coverage under the Business Trip policy. In denying Mrs. Hamilton's claim for Business Trip benefits, the district court found "that the photocopying assignment at headquarters, although authorized by the employer, did not require Hamilton to travel beyond Montgomery County." The court noted that Hamilton could have driven from the Academy to Headquarters to do the copying on December 23 or at any time after stopping at the Academy on December 24. Both the Academy and Headquarters are located within Montgomery County. Therefore, traveling outside of Montgomery County was a result of Hamilton's place of residence, not of his need to copy documents for his class. The district court thus found that "the copying assignment itself did not require him to travel outside of Montgomery County. Rather, the fact that Hamilton chose to perform the photocopying on his way to work is what necessitated his travel outside the county during the course of the trip."
 
 
 16
 Mrs. Hamilton contends on appeal that the district court erred in its interpretation of the term "assignment" as it relates to the construction of the Business Trip policy. She argues that the"assignment" consisted of the copying task in and of itself, regardless of how and when Hamilton chose to accomplish it, rather than consisting of the task in response to an order from Lt. Crittenden. In other words, Mrs. Hamilton argues that her husband's affirmative act of copying was the assignment triggering coverage under the Business Trip policy, with or without a command from Lt. Crittenden.
 
 
 17
 Mrs. Hamilton's argument is irrelevant, however, because she fails to address the crux of the district court's finding, which is that this "assignment" did not require Hamilton to travel beyond the Montgomery County line. Both the Academy and Headquarters are located within Montgomery County approximately one mile apart. By his own volition, Hamilton opted to complete the task of copying on the way to work rather than at any other time. Nothing in the nature of the "assignment" itself, however, required Hamilton to exit the county.
 
 
 18
 Furthermore, the last sentence of the second paragraph, stating that "[a]n Employee will not be considered on a Business Trip while he is traveling between his permanent residence and his regular place of employment" excludes from coverage the exact situation at hand. Plain common sense supports the district court's finding that Hamilton's trip at the time of his accident was a routine commute that he would have taken under normal circumstances to get to work and was not necessitated by the task of copying. Therefore, the district court was correct in finding as a matter of law that Hamilton's commute to work cannot be recharacterized as a Business Trip under the terms of the policy that required him to travel beyond the boundaries of Montgomery County.
 
 B.
 
 19
 Under the Accidental Death and Dismemberment Policy, an employee is entitled to accidental death benefits if"the loss suffered by the Employee is the direct result of an accidental bodily injury sustained by the Employee in the performance of his employment with the Employer." Under the Maryland "coming and going" rule, however, an employee is not "in the performance of employment" while merely commuting to and from work, and therefore injuries sustained while in route are not compensable. See, e.g., Fairchild Space Co. v. Baroffio, 77 Md.App. 494, 497, 551 A.2d 135, 136 (1989).
 
 
 20
 This is so because the hazards which employees face during daily commuting trips are common to the public at large. The risks to which an employee is exposed while going to or coming from work are no different from the ones which confront workers while they are traveling on personal excursions.
 
 
 21
 77 Md.App. at 497, 551 A.2d at 136 (quoting Gilbert & Humphreys, Maryland Workers Compensation Handbook, atSec. 6.6 (1988)).
 
 
 22
 Mrs. Hamilton nonetheless argues that her claim falls within the two exceptions to the "coming and going" rule. The first is the "dual purpose" exception, which provides that
 
 
 23
 [i]njury during a trip which serves both a business and personal purpose is within the course of employment if the trip involves the performance of a service for the employer which would have caused the trip to be taken by someone even if it had not coincided with the personal injury.
 
 
 24
 Baroffio, 77 Md.App. at 498, 551 A.2d at 137 (quoting 1 Larson, Workmen's Compensation Law, Sec. 18.00 (1985)).[2] Mrs. Hamilton fails, however, to show that her husband deviated from his normal route in order to perform the task of copying. As discussed above, the trip primarily was necessitated by Hamilton's need to get to work in Montgomery County from his home in Carroll County. In fact, the accident occurred only a few miles away from home. Had another employee been assigned the task of copying, the trip would have been made from the Academy to Headquarters without the need to travel the road on which Hamilton's accident occurred. His need to travel this route therefore served no dual purpose with the task of copying and thus precludes the claim from falling under this exception to the "coming and going" rule.
 
 
 25
 A second exception to the "coming and going" rule arises where an employee is injured during a commute that involves a"special errand" in which "inconvenience, urgency, or hazard" is imposed upon him by his employer. Id. at 501, 551 A.2d at 138 (quoting 1 Larson, Workmen's Compensation Law, Sec. 16.11 (1985)). The district court found that "Hamilton's photocopying assignment, per se did not contain any hazard, inconvenience, or urgency that would bring it within the ['special errand'] rule, nor did it require any substantial trouble or time to accomplish." Contrary to the district court's findings, Mrs. Hamilton argues that her husband's need to wake up and depart earlier than usual constituted an inconvenience that exposed Hamilton to the hazardous conditions that most likely caused the accident and thus involved sufficient inconvenience, urgency or hazard as to constitute a "special errand." Once again, however, she fails to show that Hamilton was required to perform the copying at this particular time or that he would not have been exposed to these conditions but for the copying assignment, since this was the route he normally took to work.
 
 
 26
 Furthermore, the facts of this case are similar to those of Baroffio, in which the plaintiff was required to give a presentation to her coworkers on a Monday morning and was told to arrive one-half hour earlier than usual to prepare. On her trip to work Monday morning, Baroffio was injured in a car accident. In rejecting her claim that her case fell within the "special errand" exception to the coming and going rule, the Court of Special Appeals noted that the requirement to report early to work did not in itself constitute a hazard, and her employer did not require her to perform any work at home. Baroffio, 77 Md.App. at 502-3, 551 A.2d at 139 (1989).
 
 
 27
 In sum, it is clear that Hamilton's trip falls squarely within the "coming and going" rule because the accident occurred along the route that Hamilton took on his normal drive to work. Aside from the fact that he may have left his home a little earlier than usual on the day of the accident, Hamilton had not deviated from his normal routine in order to undertake the task of copying. Accordingly, we affirm the judgment of the district court.
 
 
 
 [1]
 Prudential has paid Mrs. Hamilton $249,334 in Term Life and nonservice related Accidental Death Benefits, which are not at issue here
 
 
 [2]
 See also Atlantic Refining Co. v. Forrester, 180 Md. 517, 25 A.2d 667 (1942), in which the Maryland Court of Appeals adopted the following formulation of the "dual purpose" exception:
 The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal and personal the risk.
 
 
 [180]
 Md. 517, 527, 25 A.2d 667, 671 (1942) (quoting Mark's Dependents v. Gray, 251 N.Y. 90, 93-4, 167 N.E. 181, 182-83 (1929) (emphasis added))