## O'Malley *v.* Quaker City Cabs, Inc., Appellant.

Argued October 4, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-
ham, Baldrige, Stadtfeld and Parker, JJ.

*John A. M. McCarthy*, and with him *Bernard J.
O'Connell*, for appellant.

*Peter P. Zion*, for appellee.

Opinion by Cunningham, J., December 16, 1932:

Plaintiff has a verdict and judgment thereon as
damages for injuries inflicted when a taxicab, owned
by defendant and operated by one of its drivers, ran
over his left foot. The facts are practically uncontro-
verted and the question involved is whether, giving
plaintiff the benefit of every proper inference there-
from, defendant's point for binding instructions should
have been affirmed or its subsequent motion for judg-
ment n. o. v. granted.

The accident occurred about noon on October 13,
1930, along the west side of North Broad Street, Phila-
delphia, between Columbia Avenue and Oxford Street.
Traffic conditions in this block were unusual at that
time; the street is sixty-nine feet in width, from curb
to curb, but the eastern half was closed while workmen
were painting white lines on the cartway to define
traffic lanes. Four lanes were open on the western
half of the block; the one next the curb was used for
parking purposes, the second and third from the curb
for southbound traffic, and the lane immediately west
of the center line for northbound vehicles. An officer,

stationed at Broad and Oxford Streets, described the volume of traffic at the time of the accident as "very heavy."

Plaintiff was driving his automobile south on Broad in the second lane from the curb when he "noticed smoke coming through the running-board of [his] car"; he turned to his right into the lane reserved for parking and stopped approximately twenty-five feet north of Oxford along the curb and in front of other parked cars. His description of the accident reads: "I got out on the left side of my car and pulled up the hood of my automobile to find out where the smoke came from, and the smoke was coming from the emergency brakes, it was burning up. I went in the back of my car and got a pair of pliers, and got underneath my car and unloosened my nut underneath my emergency brake." Plaintiff stated that while at work under his car he was lying on his right side with his head toward the curb and that "[his] left foot was extended...... from underneath the car, about four or five inches beyond the running-board...... and [his] right foot was bent underneath [his] left." His testimony continued: "Q. Had you been in that position continuously up until the time of this accident? A. I was in that position continuously from ten to eleven minutes. Q. During that time what were you doing? A. Unloosening the nut on my emergency brake. Q. Just what happened? A. All of a sudden two runs right over my left foot, one after the other ...... Two heavy runs, heavy jolts over my left foot, which I knew was an automobile when I looked from underneath my car, looked in the front of my car, underneath the body."

Defendant's driver testified he was driving his cab south on Broad in the lane next to the parked cars at a speed of about ten or twelve miles an hour and about ten feet behind the car ahead of him, with the line of

parked cars on his right and the other southbound lane, filled with moving cars, on his left. After stating that the traffic "was very heavy" and that the space between the path of his cab and the line of parked cars was "about ten or twelve inches" he continued: "The first thing I knew that I felt was two bumps. It was impossible to see any one because I was right next to the car on my right and the car on my left. Q. As you were driving south on Broad Street did you notice any obstructions out in the cartway? A. I didn't." A portion of his testimony on cross-examination reads: "A. I felt these two bumps, but I couldn't see anything, and it felt like as if some one had left something lying out in the roadway. Q. You were not concerned with what it was until you heard some one call you? A. That is right."

Plaintiff testified he "hollered" after the driver of the cab who stopped at Oxford Street, discharged his passengers, and took plaintiff to the hospital. The cross-examination of plaintiff with respect to his statement that his foot extended four or five inches beyond the running-board of his car reads: "Q. How did you know it was extending out about four or five inches? A. Because from where he run me over . . . . . . Q. You did know it was extending out four or five inches beyond your car? A. Not before the accident, no."

We think this case should turn upon the question whether plaintiff was guilty of contributory negligence as a matter of law, although it would be difficult to find sufficient evidence in this record to sustain an inference of negligence upon the part of defendant's driver. Turning our attention, then, to plaintiff's actions, it is to be noted from his own testimony that while driving in unusually heavy traffic he turned his car to the curb and got underneath it to make a mechanical adjustment without taking any precautions to warn drivers of cars which he knew would be passing

in rapid succession close to his own that he was underneath it. Manifestly, a reasonable and ordinary degree of care and prudence would dictate that plaintiff, under such circumstances, should keep his feet under his car and not permit either of them to extend beyond its running-board on the side next to a lane of traffic in which he knew many cars would be passing. His answers, on cross-examination, indicated that he, probably unconsciously, extended his left foot into the path of approaching cars and was not aware that he had done so until it was run over by the taxicab.

Granting that a man is not necessarily guilty of contributory negligence by placing himself partially or entirely outside of the line of his car while making repairs thereto, although it is in the street, and is not bound to anticipate negligence on the part of others, and assuming that plaintiff was justified in parking his car along the curb of Broad Street, even under the traffic conditions then prevailing, for the purpose of repairing it, the question still remains, under the evidence in this case, whether his negligence did not so clearly and affirmatively appear that it became the duty of the trial judge to give binding instructions against him. The case of Roberts v. Freihofer Baking Co., 283 Pa. 573, is cited by counsel for plaintiff and by the court below as authority for submitting the case at bar to the jury, but the circumstances out of which that case arose are not comparable with those here appearing. In the case cited, a southbound autobus broke its rear axle while proceeding at midnight along a paved street with a double track street railway in the center. When stopped, it stood facing the south with the front inclined toward the western curb and with the left rear wheel standing on the nearest trolley track. A mechanic, called to replace the broken axle with a new one, was at work on the right-hand side of the bus when he was struck and killed by defendant's car coming south

at a rate of forty miles an hour. In holding that the question of decedent's contributory negligence was for the jury our Supreme Court remarked that he was "doing his work in the usual manner, well protected by red lights and street lights"; and that the circumstances did not clearly overcome the presumption of due care on his part. It was further stated in the Robert's case that "there was an open space between the bus and the east curb of sufficient width for two automobiles to pass side by side and through which [the defendant] might have driven in safety." None of the conditions which required the submission of that case to the jury are here present. Plaintiff was not working outside of his car but was concealed under it; he was not protected by signals of any kind and there was no space in the cartway into which he could safely project any part of his body. The other cases cited by counsel for plaintiff and in the opinion of the court below need not be referred to in detail; none of them involved facts comparable with the rather unusual circumstances here present.

We are all of opinion that plaintiff's own testimony affirmatively disclosed such carelessness on his part as made it the duty of the trial judge to declare him guilty of contributory negligence as a matter of law.

The judgment is reversed and is here entered for the defendant.