Di Mezzes *v.* Yellow Cab Company, Appellant.

Argued June 20, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*Charles C. Hileman, III,* with him *Josephine H. Klein,* and *William A. Schnader,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*John J. Runzer,* with him *Thomas E. Comber, Jr., Perry S. Bechtle,* and *Pepper, Hamilton & Scheetz,* for appellee.

OPINION BY WRIGHT, J., September 16, 1960:

Rita Di Mezzes filed a complaint in trespass against Albert Raditz and the Yellow Cab Company of Philadelphia, hereinafter referred to as the Company, seeking to recover damages for personal injuries caused by a motor vehicle collision. At the trial the Company

moved for a compulsory nonsuit and also presented a point for binding instructions. The jury returned a verdict against both defendants. The Company's motion for judgment n.o.v. was denied and judgment was entered upon the verdict. This appeal by the Company followed.

Miss Di Mezzes testified that, about 4:30 p.m. on February 25, 1956, she was a passenger in a taxicab owned by the Company and operated by Max Freeman. The cab was proceeding in a southerly direction in the 1400 block of South Taylor Street in the City of Philadelphia. Taylor Street is a narrow one-way two-lane street running from north to south. Parking is permitted in the right, or west lane, leaving only the east lane for moving traffic. The record does not disclose the width of the street, but the photographs introduced in evidence clearly show that there was just sufficient space for one vehicle in the traffic lane. At the time of the accident, cars were parked along the west side of the street. When the cab reached the middle of the block the left front door of one of the parked cars opened and was immediately struck by the right front of the cab. As a result of the collision the right front headlight, right front bumper, and right front fender of the cab were damaged. Miss Di Mezzes stated that she was sitting on the right-hand side of the rear seat of the cab, with a large cardboard box resting on her lap, "and all of a sudden something hit us and I fell to the floor of the cab". Her version of the accident was that, when the front of the cab was two or three feet from the left front door of the parked car, the door was "flung open" and struck the front part of the cab.

Raditz testified that he had parked along the right-hand or west side of South Taylor Street. After parking, and before attempting to get out, he looked down

toward the seat beside him at a paper which contained an address he was seeking. He put the paper in his pocket, "glanced up, looked in the rear view mirror, then reached for the handle of the door". As he did this, he looked out the left window into the side view mirror and, seeing nothing, opened the door about ten inches when it was suddenly torn from his grasp. He admitted that he did not observe the taxicab before the collision. "I assume he was in a blind spot from my left rear window and my back window". He also stated that there was no perceptible interval of time between his opening of the door and the happening of the accident. He first saw the cab when it was in a stopped position beside his car after the accident, at which time the front of the taxicab was about two feet in front of the Raditz car.

Freeman testified that, as he was proceeding south in the 1400 block of South Taylor Street, there was a solid row of parked cars on the right side. He was moving at a speed of from three to five miles per hour, with his foot resting on the brake. He explained that he was familiar with the neighborhood and wanted to be able to stop immediately if a child should dart from the sidewalk into the street. As he reached the middle of the block, the door of a parked car suddenly opened in his path. At that time the front of the cab was only a foot or so from the door. He immediately applied pressure to the brake, but was unable to avoid striking the door. The cab came to a stop within a few feet of the point of contact.

The Company's contention here, as it was in the court below, is that there is no evidence of any negligence on the part of its driver. An examination of this record, in the light of the applicable legal principles, leads us to the same conclusion. Our decision will of course not affect the judgment so far as Raditz is concerned.

In considering an appeal from the refusal to grant judgment n.o.v., we must view the evidence in the light most favorable to the verdict winner, resolving all conflicts in his favor and giving him all favorable inferences usually adducible from the evidence: *Hyndman v. Pa. Railroad Co.*, 396 Pa. 190, 152 A. 2d 251; *Brown v. Shirks Motor Express*, 393 Pa. 367, 143 A. 2d 374; *Farmers' Northern Market Co. v. Gallagher*, 392 Pa. 221, 139 A. 2d 908; *Beatty v. Hoff*, 382 Pa. 173, 114 A. 2d 173. A common carrier for hire owes a duty to its passengers to exercise at all times the highest degree of care, vigilance, and precaution in their transportation: *Dayen v. Penn Bus Co.*, 363 Pa. 176, 69 A. 2d 151; *Pantuso v. Pittsburgh Motor Coach Co.*, 360 Pa. 464, 62 A. 2d 56. However, a public carrier is not an insurer: *Seburn v. Luzerne and Carbon County M. T. Co.*, 394 Pa. 577, 148 A. 2d 534; *Nebel v. Burrelli*, 352 Pa. 70, 41 A. 2d 873; *Hughes v. Philadelphia Transportation Co.*, 154 Pa. Superior Ct. 162, 35 A. 2d 544. The mere fact that the collision occurred affords no basis for an inference that the company's driver was at fault: *Donaldson v. Pittsburgh Railways Co.*, 358 Pa. 33, 55 A. 2d 759; *Wenhold v. O'Dea*, 338 Pa. 33, 12 A. 2d 115.

It is argued on behalf of Raditz, the appellee, that the cab "was travelling too close to the parked cars". In *O'Malley v. Quaker City Cabs, Inc.*, 107 Pa. Superior Ct. 380, 163 A. 339, we held that it was not negligence on the part of a cab driver proceeding south along the west side of North Broad Street to pass a parked car so closely as to injure a man making repairs underneath it with one of his feet extended four or five inches beyond the edge of the running board. Certainly, on a street as narrow as South Taylor Street, there could be no inference of negligence from the fact that a cab was operated at a distance of ten or twelve inches

from the cars parked to its right. Indeed, in his charge to the jury, the trial judge stated: "The driver had a right to proceed where he was and in the manner in which he was proceeding and in that path".

It is also argued that the cab driver "was inattentive in a hazardous area". The court below attempted to justify such an inference "on the basis of Freeman's testimony, later changed, that he did not see the door open". This criticism is not supported by the record. A reading of Freeman's testimony in its entirety fails to reveal that he changed or altered his testimony in any respect. He never testified or hinted that he did not see the door open. To the contrary he stated, and repeated, that when the front of the cab was about a foot from the door it suddenly opened, at which time he applied the brake.

Finally, it is argued that the cab "was travelling at an excessive speed under the circumstances". However, there is no such evidence in the record. We are not in accord with the view that an inference of excessive speed can be drawn because of the fact that Miss Di Mezzes was thrown from her seat, or because of the short distance traveled between the sighting of the open door and the point at which the cab came to rest after the collision. In brief, the operator of a motor vehicle will not be held liable merely because he was unable to avoid a collision under circumstances which were unusual and not likely to be anticipated: *Soha v. Spaulding Bakeries*, 124 Pa. Superior Ct. 205, 188 A. 381; *Bloom v. Bailey*, 292 Pa. 348, 141 A. 150.

We are of the opinion that the instant appeal is controlled by *Seiler v. Philadelphia Rapid Transit Co.*, 111 Pa. Superior Ct. 69, 169 A. 422. In that case the plaintiff had parked his automobile, facing north, with its right wheels against the east curb of Forty-second Street. He opened the door on the left side and had

one foot on the running board preparing to alight when the company's cab, which plaintiff had neither seen nor heard, struck the edge of the partly opened door and broke it from its hinges. The company appealed to this court from a judgment in favor of the plaintiff. In reversing and entering judgment for the appellant, Judge (later President Judge) BALDRIGE said: "There was no element of speed involved in this case as the only testimony on that subject was given by Needleman, the driver of the cab, who said that he was passing the plaintiff's car at a distance therefrom of 12 to 15 inches, 'and as I started to pass the rear end of his car, the door flew open in front of me', and the taxicab's front fender hit the door. There was room on the street for the taxicab driver to have gone farther to the left [not so in the case at bar], but he was on his right side of the cartway and was not bound to anticipate the sudden opening of the door by Seiler without taking precautions to look or listen before so doing. It was that unexpected action that caused the accident. Negligence could not be imputed to a failure to avoid this sudden opening of the door. The driver of the taxicab was in that portion of the street where he had a right to be, proceeding properly, and, undoubtedly, he would have passed the car without a mishap but for Seiler's unforeseen action".

Judgment against appellant reversed, and here entered in its favor. Cf. *Casseday v. Baltimore & Ohio R. Co.*, 343 Pa. 342, 22 A. 2d 663.