GREENWALT *v.* BRAUNS BUILDING SPECIALTIES CORPORATION, ET AL.

[No. 34, October Term, 1953.]

*Decided December 4, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John G. Noppinger* for the appellant.

*H. Ross Black, Jr.,* with whom was *Rome & Rome* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by John J. Greenwalt, appellant, from a judgment on a verdict by a jury reversing the decision of the State Industrial Accident Commission, (Commission), denying him compensation under the Workmen's Compensation Act. Code, 1951, Article 101.

The pertinent parts of the testimony given before the Commission follow. The claimant, John J. Greenwalt, had been employed as a carpenter for approximately fifteen years by Brauns Building Specialties Corporation, one of the appellees here. On and about April 26th and April 30th, 1951, the appellant, while employed by Brauns, was engaged in installing tin clad doors for fire protection in a new warehouse building at the Army

Chemical Center, Edgewood, Maryland. He was being assisted by a fellow employee, Joseph Green. On Thursday, April 26, 1951, he was drilling through a concrete wall seventeen or eighteen inches thick. While standing on a stepladder, using a ten pound maul to drive the bolts through the wall, a pain "struck" him in the throat. He got off the ladder, walked about fifty feet to a drinking fountain, got a drink of water and rested awhile. He said he had never had this pain before and had no idea what it was. Joseph Green, when he returned, had driven the bolts in the wall. Both men returned home that evening. The next day, Friday, he installed light hardware on the tracks and pulleys and hung the doors on the tracks. They did not work on the following Saturday and Sunday.

On Monday, April 30, 1951, they finished the doors and went to another building and set the tracks there. Appellant, while putting up the tracks, stood on one ladder and Joseph Green stood on another ladder to his left, each holding one end of the track. When appellant was near the top of the ladder the track, which was made of three-eighths inch steel, three and three-quarter inches wide and about eighteen feet long and weighing approximately one hundred pounds, slipped. In order to save Green, appellant twisted around in an effort to grab Green's arm. When he did this pain "struck" him in his throat and later in his breast bone. Appellant "hollered" and Green saw "his face twisted a little bit" and he said: "Take your time, we'll go down with it." They rested on the ladder for "a couple of seconds". Appellant and Green came on down the ladders carrying the track. After resting awhile appellant went home. That evening he visited his family doctor who told him to go home and rest and keep quiet, and that he had made arrangements to have an electro-cardiogram taken of appellant. This was taken on Friday, May 4th, after which appellant went home. On Saturday morning, May 5th, about five o'clock A.M. he was seized with another pain which resulted in hospitalization

and treatment under the care of Dr. C. Edward Leach.

Dr. Leach, a specialist in cardio-vascular diseases, testified that he first saw the appellant on May 4th. Appellant gave him a history of these attacks of pain. The physical examination showed a slight enlargement of the heart and his electro-cardiogram showed signs, of hardening of the arteries which had affected the heart muscles. Dr. Leach recommended that appellant rest at home and gave him some pills and nitroglycerin to take if the pain recurred. He said his diagnosis of appellant's condition was arterio-sclerotic heart disease with angina pectoris. This diagnosis was based upon appellant's history from April 26th through May 4th. He could not be certain about when the disease started but it was a gradual development probably over a period of years. He did not think there was "any suggestion of arterio-sclerotic disease beginning as a traumatic condition". He said that trauma may exaggerate or accelerate the disease and that it was quite possible that the work could have aggrevated appellant's condition. He also said that had appellant been doing his regular work and had not experienced the unusual condition in expending himself, it was possible that the injury might not have occurred. On cross-examination Dr. Leach testified that the arteries having thickened and narrowed the actual pain results from an inability to supply enough blood to take care of the demand on the muscle at a given time. The basic processing, he thought, was always "of gradual onset". He did not know of any way to estimate the period required to develop the disease to a dangerous acute condition. He thought it would probably take five years from the time the disease started. The acute attacks, such as the appellant had, are frequently due to strain or trauma but not necessarily so. To the following question: "Now, you spoke of Mr. Greenwalt's having had no severe attacks, but that he had had similar pains over a period of time prior to the first severe attack on April 26th. Could you tell the Commission about how long you estimate those?"

Dr. Leach answered: "For about a year." Dr. Leach further said that as far as certainty is concerned, it was not possible to state any positive opinion as to whether the work played any part in appellant's disability and further that it was certainly possible that, regardless of the type of work appellant was doing, this acute attack could have happened.

At the trial of the case in the Baltimore City Court, the testimony taken before the Commission was read from the record to the jury. The single issue submitted to the jury was "Is the claimant's disability the result of an accidental personal injury arising out of and in the course of his employment?" To this question the jury answered "No". From the judgment entered on that verdict for the appellees, reversing the award of the Commission, the appeal is taken here.

The appellant contends that his motion for a directed verdict on the issue submitted and his motion for a judgment N. O. V. should have been granted. *Aetna Life Ins. Co. v. Bittinger*, 159 Md. 262, 270.

The appellant strongly stresses the provision in Code, 1951, Art. 101, Sec. 57, that in all court proceedings under or pursuant to the Workmen's Compensation Act, the decision of the Commission shall be *prima facie* correct and that the burden of proof shall be upon the party, (the appellees here), attacking the same. It was aptly said in the case of *Williams Construction Co. v. Bohlen*, 189 Md. 576, at page 580: "* * * where the Commission has considered conflicting evidence of essential facts, and has drawn one of two different permissible inferences, there may be imposed upon the party attacking the decision of the Commission merely a burden of persuasion, and not necessarily a burden of additional proof. He may rely upon identically the same evidence that was presented before the Commission. The provision of the Act placing the burden of proof upon the appellant means only that he must prove in the trial Court what he asserts. His burden is to convince the Court or the jury that the Commission de-

cided incorrectly in interpreting the facts, or deducing the inference from the facts, or construing the law applicable to the facts. *Schemmel v. T. B. Gatch & Sons Contracting & Bldg. Co.*, 164 Md. 671, 166 A. 39; *Moore v. Clarke*, 171 Md. 39, 45, 187 A. 887, 107 A. L. R. 924." This burden of proof provision means nothing more than that, if the mind of the trier of facts is in equal balance on the evidence in the record, the finding of the Commission should be affirmed. *Penn. R. R. Co. v. Stallings*, 165 Md. 615, 619; *Stewart & Co. v. Howell*, 136 Md. 423, 434.

The word "accident" usually is associated with the idea of trauma and involves, at least to a degree, elements of force, violence and surprise. In Workmen's Compensation cases its meaning includes any mishap which results in physical injury produced by some unusual and extra-ordinary condition or happening in the employment. It has been interpreted to include a heart dilation arising out of some unusual or extra-ordinary condition in the employment, even where the injury was partly due to pre-existing diseases. *Schemmel v. Gatch & Sons Contracting & Bldg. Co.*, supra, 680; *Balto. & Ohio R. R. Co. v. Zapf*, 192 Md. 403, 410, and cases there cited. The inquiry here is whether the breaking of the track caused or in part aggravated appellant's arteriosclerotic heart diseases. The only testimony on this fact is that of Dr. C. Edward Leach, who had treated the appellant and who was produced by the appellant. He thought it was "quite possible" that the slipping of the track could have aggravated appellant's condition. This is as far as he would go in establishing appellant's claim. It is well settled that where there is any question of fact involved, the litigants have the right to have it submitted to a jury. The trial judge has no power to control the exercise of the jury's function to weigh the credibility of the evidence. *Consolidated Engineering Co. v. Feikin*, 188 Md. 420. The court cannot assume the existence of a fact and should not control the right of the jury to weigh the evidence where there

is any question of fact or material inference of fact. In order for the trial court in this case to have directed a verdict for the appellant it would have been necessary for the trial judge to have found that there was no dispute as to any fact or as to any material inference of fact that the slipping of the track either caused or aggravated appellant's condition. *Atlantic Refining Co. v. Forrester*, 180 Md. 517, 523.

In *Moller Motor Car Co. v. Unger*, 166 Md. 198, an employee, over seventy years of age and apparently in good health, received a severe blow on his head while at work. Within a week or ten days, without any intervening cause, he showed symptoms of paralysis, grew steadily worse and three months later died of a cerebral hemorrhage. The attending physician, although unable to state positively the cause of the hemorrhage, testified that he knew of no intervening cause and that the accident could have caused the illness. The employer claimed there was not sufficient evidence to submit to the jury the question as to whether the blow on the claimant's head was the proximate cause of his death. There was no claim there, as in the instant case, that a verdict should have been instructed for the claimant. This Court there held, in affirming the submission of the case to the jury, that in Compensation cases "proximate cause" means that the result could have been caused by the accident and that no other efficient cause had intervened between the accident and the result. It was there said: "Of course, such possibility must amount to more than a guess, and the relation of the accident to the death or condition complained of, in point of time and circumstance, must be not merely fanciful." *Baber v. Knipp & Sons*, 164 Md. 55, 67. In *Bethlehem Shipyard v. Scherpenisse*, 187 Md. 375, the claimant stepped on a nail while in the course of his employment and sustained a large puncture wound in his left foot. He later died of typhus fever. The doctor testified that in his opinion typhus fever was the cause of the death. The employer contended the evidence was not legally

sufficient to submit to the jury the question as to whether the employee's death was the result of the accidental injury. There was no claim, as in the instant case, that the jury should have been instructed to bring in a verdict for the claimant. This Court there said: "It is undeniable that mere possibility of causal connection between a workman's accidental injury and his death is not of itself sufficient to make a submissible case. The connection between a workman's injury and his death must be more than a mere guess or conjecture in point of time and circumstance." Under the evidence here the slipping of the track might quite possibly have caused appellant's condition. The jury might well infer from Dr. Leach's testimony that the slipping of the track did not cause or aggravate this disease, which Dr. Leach thought could have existed for about a year prior to the occurrence here and during which time appellant had had similar pains. In fact he said it was certainly possible that regardless of the type work appellant was engaged in, this acute attack could have happened. In our opinion the trial judge was correct in not withdrawing the question of fact from the jury and in not directing a verdict for the appellant.

The appellant finally excepts to the following part of the charge given by the trial judge to the jury: "In other words, if, in this particular case, Mr. Greenwalt would have had these attacks whether he had these experiences in his employment or not, then of course it would not be compensable and your answer to the issue would have to be 'no'. The reason I say what I have just said is to instruct you on the law in that regard, that is, that even though a pre-existing physical condition may have contributed to the disability does not necessarily mean that the disability did not arise in the course of employment, but it is a matter for the jury's determination as to whether it did or not. The pre-existing condition is, of course, something that the jury should and must take into consideration in its deliberations on the proper answer

to be given to this issue." The specific objection is that the jury should not have been allowed to consider the pre-existing heart disease of the appellant. Dr. Leach's testimony was very positive that this condition existed long before April, 1951. Therefore, this fact should have been considered by the jury. Finding no error, the judgment will be affirmed.

*Judgment affirmed, with costs.*