CRUMPLER *v.* PIERCE

[No. 122, September Term, 1968.]

*Decided March 5, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SINGLEY, JJ.

*Joseph P. Rieger* and *Joseph W. Spector,* with whom were *Spector, Lembach & Rieger* on the brief, for appellant.

*Samuel D. Hill,* with whom were *Buckmaster, White, Mindel & Clarke* and *T. Leo Sullivan* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Appellee (Pierce) says appellant (Crumpler) ran over his feet. Claiming "to be seriously, painfully and permanently injured" he sued Crumpler in the Circuit Court for Harford County. The case was tried on 4 March 1968 before Dyer, J., and a jury, resulting in a verdict in favor of Pierce for $5,000. Crumpler appeals to us claiming the learned trial judge should have directed a verdict in his favor since there was no evidence of any negligence on his part.

The morning of Saturday, 12 June 1965, was sunny and warm in Bel Air, a circumstance which doubtless induced Crumpler to drive his 1962 Oldsmobile sedan to Motor Sales of Bel Air, Inc., for minor repairs. Upon arrival at the entrance he was directed by Bill Hines, the acting service manager, to "take the car around down to the paint shop [in the rear of the building], pull it up close [parallel to the wall], and go in and tell Mr. Hanna * * * that you are here." Crumpler, alone in his car, and keeping about two or three feet from the south wall of the building, drove very slowly (three to four miles per hour) toward the rear of the building. When he came to its southwest corner he turned to the right. About five feet from the corner of the building and about a foot or two from and parallel to the west (rear) wall a Chevrolet Corvair was parked. The surrounding area was surfaced with black macadam which, to provide proper drainage, sloped gently to the west away from the rear of the building. Unknown to Crumpler, Pierce, an employee of Motor Sales, was lying under the Corvair bolting on a new front bumper. Another car, so Crumpler testified, was parked parallel and close to the building directly in front of the Corvair. Pierce, however, insists there was nothing in front of the Corvair. Intending to stop "double-parked beside both" cars Crumpler, as he had been directed by Hines, "was [trying to] get as close as he could to" the Corvair. He said the right side of his car was about 18 inches to two feet from and parallel to the left side of the Corvair. He felt "a bump," stopped and "jumped out to see what * * * [he had] hit." On the ground by the Corvair he saw Pierce who said to him, "You have run over my feet."

Pierce, who was 61 years old at the time of the accident, had been working for Motor Sales for about 14 years. He testified his feet were "sticking out in front of the" Corvair about one and a half to three and a half feet. He demonstrated his position by lying on the courtroom floor in front of the jury. We do not know what the jury saw but there is in the record a sketch made by Pierce which suggests that his feet were sticking out from under the left front part of the Corvair at an angle of about 45 degrees from the front axle. He had been working in that position for about 10 to 15 minutes. He ad-

mitted that he could have put "a sawhorse out there, or a chair, or some sort of barricade or something to warn somebody that * * * [his] feet were sticking out" and that he could have placed "some old five-gallon oil cans" near his feet. Somewhat wistfully he observed that "you can do a lot of things that you don't do." Pierce did not see Crumpler's car until after the right front wheel had run over his feet. The right rear wheel missed his feet because, he said, he pulled them back after the front wheel passed by. He insists Crumpler had been in the act of turning in so as to park in front of the Corvair but except for this statement by Pierce there is nothing in the record to rebut Crumpler's testimony that his car went in any direction except straight ahead after he turned the corner and passed by the Corvair. No one·else saw the accident.

Having called Crumpler as a hostile witness, Code, Art. 35 § 9 (1965 Repl. Vol.), it is a part of Pierce's case that Crumpler never saw Pierce or his feet and legs, that he was unable to see anything below the tops of the tires of the Corvair, that after the "bump" he continued for about eight feet before stopping, and that his car did not change course at any time after he felt the bump. He testified further that after he came to a stop his bumper was "about * * * in front of the Corvair's front bumper," that he was "right beside the Corvair, on a straight line with" it, that his car was pulled neither to the right nor to the left of a line parallel with the Corvair.

Following discussion, in chambers, of Crumpler's motion for a directed verdict, filed at the conclusion of Pierce's case, Judge Dyer said he was "half inclined to agree with" Crumpler except for the "factual dispute as to where * * * [Pierce's] feet and legs were." He went on to say that he "would have to grant" the motion if Pierce's feet "were out to the left of the Corvair," and that, he said, is where Crumpler "puts his [Pierce's] feet, by virtue of where he [Crumpler] parked his car." But, he continued, Pierce said "his feet were out in front" of the Corvair and that Crumpler "ran over them in turning in [so as] to park along the end of the building, and that's where his car was after it was all over, directly in line with the Corvair." Judge Dyer felt that the "factual dispute" required submission to the jury. We do not agree. We see no reason why the fact

that Pierce's feet may have stuck out to the front or to the side or somewhere in between should make any difference. That Crumpler was completely unaware of Pierce's presence under the Corvair is a part of Pierce's case. Crumpler stated, again as part of Pierce's case, that at no time after he turned the corner of the building could he see anything lower than the tops of the Corvair's tires. Whether Crumpler kept straight on his course, as he said, or whether he attempted to turn in so as to park in front of the Corvair can make no difference. No negligent act or omission is discernible in either case. Moreover it seems impossible to us that Crumpler's front wheel could have run over Pierce's feet if they had been sticking out in front. It will be recalled that as Crumpler passed by the Corvair the right side of his car was about 18 inches to two feet from the left side of the Corvair and that his course was parallel to the Corvair. Even if we assume that Pierce's feet had been sticking out as much as three and one half feet anywhere in front of the Corvair, and having in mind also the structure of the modern automobile, the manner in which the front wheels move in steering, the proximity of Crumpler's car to the Corvair and the fact that it was parallel to it, we think the developing geometry of the movement, in the circumstances, would have precluded the passage of the right front wheel over Pierce's feet.

To repeat what has been said many times, "in determining the correctness of denying the motion for a directed verdict, we must, of course, consider the evidence most favorable to the plaintiff, together with all reasonable and legitimate inferences which may be deduced therefrom." *Wood v. Johnson,* 242 Md. 446, 452, 219 A. 2d 231 (1966). In *Trusty v. Wooden,* 251 Md. 294, 297, 247 A. 2d 382 (1968) we said that "one may call an adverse party as a witness but if he does so he is bound by his adversary's testimony unless it is contradicted or discredited." Crumpler's testimony was not contradicted in any significant detail. It is true, of course, that whereas Crumpler said a car was parked in front of the Corvair, Pierce said nothing was there. Crumpler said he did not turn to the right but continued straight ahead; Pierce said Crumpler "was heading in to the right in front of the" Corvair. As we have pointed out, whether there was or was not another car in front of the Cor-

vair, or whether Crumpler went straight ahead or "turned in to the right" makes no difference. In all other respects Crumpler's testimony was neither contradicted nor discredited and it must stand as a part of Pierce's case. *Maszczenski v. Myers,* 212 Md. 346, 352, 129 A. 2d 109 (1957). We have not seen in this record any testimony suggesting that Crumpler failed to exercise reasonable care in the circumstances or that he should or could reasonably have foreseen that Pierce might have been under the Corvair or that, if there, he would allow his legs to project into an area in which he knew there were, from time to time, moving vehicles. As we said in *Aleshire v. State,* 225 Md. 355, 366, 170 A. 2d 758 (1961) :

> "The notion of foreseeability has been correlated with the development of liability for negligence for many years; and injuries which could by no reasonable possibility have been foreseen, and which no reasonably prudent person would have apprehended, cannot form the basis for actionable negligence."

Pierce seems to place great reliance on *Mahan v. State ex rel. Carr,* 172 Md. 373, 191 A. 575 (1937) but we think it is readily distinguishable from the case at bar. In *Mahan* a child was struck while walking on the dirt shoulder adjacent to a highway. Mahan's car was proceeding slowly, about eight to ten miles per hour; two wheels were on the dirt shoulder when the accident occurred. Mahan testified he didn't see the child, that he was watching another car approaching from the opposite direction. Mahan was four feet ten inches tall. He was 83 years old and he was familiar with the street at the time of the accident. We held that the child was in plain view of Mahan for at least 26 feet before the accident, that a parked car did not obscure his view, and that he knew persons might appear on the road at any time because of houses adjacent to the roadway. We said that had he exercised that degree of vigilance proportioned to the dangers of the situation he would have discovered the child's presence in time to avoid the accident. We went on to say that the jury could find Mahan failed to see the child because he was not looking at the road immediately before him and that because of his height he could not see over the

car hood objects in front of and close to him. If a person of small stature has difficulty seeing children or objects in the highway, he has a duty to exercise greater watchfulness to avoid injuring others also lawfully using the highway than would be necessary for one of normal stature.

There is no evidence here that Crumpler was short or tall, that he was more than casually familiar with the area, or that he had any reason to suspect a mechanic might be working under a car outside of the shop.

In *Flyer v. Del Borrell,* 227 Md. 545, 177 A. 2d 865 (1962) we affirmed a verdict directed in favor of the defendant who struck a child who darted suddenly into the path of her automobile. We said that primary negligence on her part had not been shown. There was no evidence of excessive speed nor of skid marks. There was no evidence that children had been in the street for any length of time before the accident, nor was there any evidence that the defendant could have avoided striking the child by promptly and effectively applying her brakes. It was not shown that she had an opportunity to observe the child as it darted from between the parked cars, nor that she had time to apply her brakes when confronted with the emergency. Judge Marbury, for the Court, said:

> "There is not a scintilla of evidence to show that a prudent person, confronted with the same situation, would have acted differently, or that the appellees did anything that prudent persons would not have done. * * * Here there is nothing to indicate that the driver of the car actually saw, or reasonably could or should have seen, the child until she suddenly appeared in front of her. * * *.
>
> "As we have determined there was a complete absence of legally sufficient evidence that the appellee driver was driving at an excessive speed, or in a reckless manner, or that she could have avoided striking the child by the exercise of ordinary care, or that she or her husband committed any sequential act of negligence after the child was struck, the trial court was correct in directing a verdict for the appellees * * *." *Id.* at 550.

One curious feature of the case before us is Pierce's insistence that his feet and legs "stuck out" from the front of the Corvair, coupled with his reliance upon the applicability of the familiar principle that a motorist is bound to see what he could have seen had he exercised due care under the existing circumstances. *Hoerr v. Hanline,* 219 Md. 413, 421, 149 A. 2d 378 (1959). It is at once obvious that if Pierce's feet did indeed "stick out" from the front of the Corvair they were hidden from Crumpler's view as he turned the corner by the Corvair itself and Crumpler could not possibly have seen them until he came about abreast of the Corvair and then of course his own car would have obstructed his view.

Other courts dealing with similar factual situations have denied recovery to injured plaintiffs on the ground of contributory negligence. *Tait v. Philadelphia Transp. Co.,* 153 Pa. Super. 449, 34 A. 2d 269 (1943) and *O'Malley v. Quaker City Cabs, Inc.,* 107 Pa. Super. 380, 163 A. 339 (1932). What we have said in this opinion makes it unnecessary for us to consider whether Pierce was contributorily negligent as a matter of law.

> *Judgment reversed, without a new trial; appellee to pay the costs.*