DEREMER, et al. *v.* LISTON, et al.

[No. 142, September Term, 1968.]

*Decided March 6, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SINGLEY, JJ.

*William W. Grant* for appellants.

Submitted on brief by *Jack R. Turney* for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

Power House Hill is about a mile north of Oakland on the Sang Run Road, one of the lesser public roads of Garrett County. Late in the afternoon of a rainy July day, in 1964, as Randi Deremer, northbound, began the descent of Power House Hill, Curtis Liston, southbound, was about to ascend it. They collided on a tight curve near the bottom of the hill. Both vehicles were damaged but neither was disabled. None of the Listons, at the time, appeared to be injured. Nearly three years

later, 14 June 1967, Liston, his wife, Martha and an infant (16) son, Wesley, filed suit against Randi and her father in the Circuit Court for Garrett County, all claiming personal injuries.

At the conclusion of the trial before Hamill, J., and a jury, on 11 April 1968, the Listons moved for a directed verdict for the reason that Randi Deremer was "solely responsible for the collision" and that there was no evidence "tending to show in any manner any negligence on the part of * * * [the Listons] directly or indirectly contributing to the said collision." Judge Hamill granted the Listons' motion and denied a similar moton made by Randi and her father. He told the jury "there ha[d] been no contradiction of the * * * [Listons' testimony] show[ing] that * * * [Randi] was negligent and * * * that they [the Listons] were not negligent" and that the jury's sole function would "be to rule on the amount of damages sustained by * * * [the Listons]" and, continuing, he said he was about "to instruct * * * [them] relative to those damages." What he may have said to the jury about damages is not in the record but no impropriety in respect thereof has been asserted by the appellants. According to the docket entries and the briefs both parties *agreed* to the entry of a verdict (and judgment) for one cent in favor of Wesley Liston against the appellants. The jury awarded $6,000 to Curtis Liston and $475 to Martha. Appellants moved for a judgment n.o.v. "on the issue of damages" and at the same time moved for a new trial "on the issue of damages." After a hearing both motions were denied. From the ensuing judgment this appeal was timely filed.

## I.

Although appellants' main effort is aimed at the question of damages, the propriety of directing the verdict for the Listons is raised in the brief and it seems to require our consideration. A more cautious trial judge might, to be sure, have reserved his ruling on the motion and awaited the outcome of the jury's deliberations. Maryland Rule 552 c. We are not unmindful of the rule that we must consider the evidence in a light most favorable to the party against whom the motion is made. *Wood v. Johnson,* 242 Md. 446, 219 A. 2d 231 (1966). Nevertheless we cannot say the evidence, or lack of it, fails to support Judge

Hamill's action. *See Richardson v. Boato,* 207 Md. 301, 306, 114 A. 2d 49 (1955). Randi was 18 years old at the time. She was driving her father's fairly new (1963) Rambler sedan. As she approached the curve she said she was "on her side of the road." "[I]n the curve, * * * [she] pressed on the brake, * * * [which] caused the back end of * * * [her] car to move —to slide, and then the approaching car was hitting * * * [her] car." She was "sorta out of control at the time." She said "it was raining, and the road was slippery and * * * [she] slid." She saw the sign warning northbound motorists of the existence of the curve. Trooper Tucker, Maryland State Police, testified Randi was "travelling down-grade and starting to negotiate the sharp right-hand turn." He said, "the indication at the scene was that * * * [she] had failed to keep to the right of the center of the roadway, had crossed and had struck the Liston vehicle * * *." The trooper also said his report indicated Randi was travelling "at an excessive rate of speed." Liston, testifying in chief, agreed generally with the trooper's testimony. During his cross-examination he said Randi was over on his side of the road and that he "was getting off as best * * * [he] could—as quick as * * * [he] could." It is obvious that the facts are undisputed and we think Judge Hamill was justified in concluding that the only reasonable inference to be drawn from them was that Randi lost control of her car because she entered the curve at a rate of speed which, in the circumstances, was too high. She knew it was raining, that the road was narrow and slippery, that it was down grade and that the curve was sharp. Clearly the situation was one to be approached with greater care than she appears to have exercised. Indeed, appellants seem to have accommodated themselves to such a conclusion by agreeing to the entry of a verdict and judgment against themselves in favor of young Wesley. That the amount thereof was only one cent makes it no less an adjudication of fault on their part. It might also be noted that the odd language of the, motions for judgment *n.o.v.* and for a new trial suggests a concern only with the matter of damages rather than liability.

## II.

The principal contention of appellants seems to be that there was no evidence legally sufficient to establish the existence of an injury to Curtis Liston and that even assuming there was such evidence there is nothing to show that it was the result of the accident. Liston admitted that, at the scene of the accident, he did not realize that either he or his wife "had suffered any injuries." He thought Wesley had broken his leg. On the way home, however, he realized he had been injured. As he "went to get out of the car * * * to get gas on * * * [his] way home" he said he "couldn't hardly stand on * * * [his] left leg." On the day following he visited Dr. James H. Feaster, Jr., of Oakland. Dr. Feaster, who was produced as a witness by appellants, testified in part, as follows:

> "Well, this gentleman [Liston] came to me and his chief complaint was that he had been in an automobile accident last night, the night before, and apparently on the Sang Run Road at about 3:55 P.M. *He had no injury at the time,* but now, this was a day later, *he had some pain in his low back area and his left hip.* * * * [A] review of his complaints of his skeletal system was that he had no pain in his legs, but that *he had some pain in his left hip.* * * * this was the story as he related it to me, * * *. An examination of the back, *he had some tenderness over his left sacral area and over the left sciatic nerve.* There was no ecchymosis, by this I mean there were no visible bruises at this time. A urinalysis was negative, and *my impression at the time was a contusion of the left hip,* and from that point, I did order X-rays to be done out at the hospital." (Emphasis added.)

The report of the radiologist was negative. Dr. Feaster did not prescribe any treatment nor did he see Liston again.

When Dr. Feaster testified there already had been admitted in evidence, as a part of the Listons' case, a letter from Dr. F. A. Wallington, an osteopath, of Bruceton Mills, West Virginia, a bill from Dr. Harold O. Kamons, M.D. of Markleysburg, Pennsylvania and bills from Dr. E. A. Cupp of Friendsville,

Maryland and Dr. J. B. Huffman, of Morgantown, West Virginia, both chiropractors. The following colloquy appears in the testimony:

"BY MR. TURNEY [Counsel for the Listons] : Your Honor, I have these medical bills which I would like to enter into evidence.
"BY MR. GRANT: No objection.
"BY THE COURT: Why don't you put them all together and enter them as one exhibit. I understand there will be no objection.
"BY MR. GRANT: No, no objection, sir.
"BY MR. TURNEY: Yes, sir."

Dr. Wallington's letter and the bills of the others were sufficient to support a finding by the jury that Liston consulted Dr. Wallington a few weeks after he saw Dr. Feaster and that in the succeeding seven months he made 25 visits to Dr. Wallington who treated him "for injuries suffered in an automobile accident on July 12, 1964" and whose diagnosis was "acute contusion of left sacro-iliac joint with resultant sciatic neuritis," that during 1965 he received 29 treatments from Dr. Huffman, that during 1966 he visited Dr. Huffman ten times and four times in 1967, that in February 1967 he consulted Dr. Kamons and that he made ten visits to Dr. Cupp.

Appellants argue that the bills are legally insufficient to establish damages because the doctors were not present to testify as to the reasonableness of the charges, citing *Kujawa v. Baltimore Transit Co.,* 224 Md. 195, 167 A. 2d 96 (1961) and several earlier cases. Nevertheless the bills (and Dr. Wallington's letter) came in without objection and even if they fall short of supporting the amounts shown thereon because there was no proof of reasonableness, they are in evidence and the jury was entitled to consider what force and effect they might have in corroborating Liston's testimony that he was injured, that his injury was caused by the accident, that, as a result, he experienced pain and suffering, and that he went to these doctors for relief from his pain and discomfort. *Giba v. Bastian,* 246 Md. 508, 229 A. 2d 93 (1967) ; 5 Am. Jur. 2d *Appeal and Error* § 737 (1962).

Of course we do not know what instructions Judge Hamill gave to the jury in respect of damages. Whatever they were, however, neither party seems to have complained about them so we shall assume they were not inappropriate. That it was proper, in the circumstances, to submit the determination of Liston's damages to the jury hardly requires the support either of argument or of the citation of authorities.

### III.

The same contention (as in II) is made in respect of the injury to Martha Liston. She testified she "was throwed up against the dash, and * * * [her knee] was injured. * * * it was on the way home that * * * it began * * * burning and stinging * * * [her]." She visited Dr. Feaster on the following day. She said his examination and the X-ray pictures revealed nothing "more than pins and clamps that * * * [she] already had in * * * [her] knee" from a previous accident. She said the blow to her knee moved one of the pins closer to the surface of her skin causing her "pain and misery" which she didn't have before. She admitted that, other than the visit to Dr. Feaster, she neither sought nor received any medical treatment.

Appellants, relying on *Jewel Tea Co. v. Blamble,* 227 Md. 1, 7, 174 A. 2d 764 (1961), contend it was error to allow the jury to consider whether Martha's "alleged" injury was responsible for her pain and suffering because in the absence of medical testimony the jury would be left to speculate as to whether it was the result of the earlier injury requiring "pins and clamps" or the "alleged" injury. They quote from our opinion in *Jewel Tea*:

> "It has been held that reliance on lay testimony alone is not justified when the medical question involved is a complicated one, involving fact finding which properly falls within the province of medical experts."

But, concluding the paragraph, we went on to say:

> "What we have said should not be taken as indicating that we conclude that all awards in cases of injuries of a subjective nature can stand only if accom-

panied by definitive medical testimony, as the appellant suggests. For a discussion of this topic see 2 Larson, *Workmen's Compensation Law,* §§ 79.50, et seq. See also *Beth. Steel Co. v. Ziegenfuss,* 187 Md. 283, 49 A. 2d 793 (1946); *Neeld Constr. Co. v. Mason,* 157 Md. 571, 146 Atl. 748 (1929); *Gas Company v. Caler,* 157 Md. 596, 146 Atl. 750 (1929), and *Valente v. Bourne Mills,* 75 A. 2d 191 (R. I. 1950).

It ought to be noted that in *Jewel Tea* we had before us the single issue "whether, in a Workmen's Compensation case, the trial court properly permitted the jury to determine, on the basis of subjective lay testimony, that the employee was *100 percent disabled* when all the expert medical testimony in the case was to the contrary." (Emphasis added.) Here we are concerned only with pain and suffering, not with disability; here there was no medical testimony concerning Martha's injury; indeed, there was no testimony at all except her own which, it should be observed, came in without objection. We see no error in the action of the trial judge.

*Judgments affirmed. Costs to be paid by the appellants.*