## ACKERHALT *v.* HANLINE BROTHERS, INC., ET AL.

[No. 164, September Term, 1968.]

*Decided April 1, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Samuel Intrater* for appellant.

*John F. Linsenmeyer,* with whom was *Eugene A. Edgett, Jr.* on the brief for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

As the late William Schwenck Gilbert put it, "Here's a pretty kettle of fish." [1] The appellant (Ackerhalt) tells us the trial judge (Mathias, J.) [2] erred when he directed a verdict which set at naught an order of the Workmen's Compensation Commission, dated 2 February 1967, declaring that Ackerhalt had sustained an accidental injury on 24 March 1966 and awarding him compensation therefor. In our recital of this extraordinary affair we shall be at all times mindful of the familiar rule that the evidence and all logical and reasonable inferences deducible therefrom must be considered in a light most favorable to Ackerhalt. *Deremer v. Liston,* 252 Md. 571, 250 A. 2d 622 (1969); *Finneran v. Wood,* 249 Md. 643, 241 A. 2d 579 (1968).

Ackerhalt, 65 at the time, was employed by the appellee Hanline Brothers, Inc. (Hanline), as an "outside paint salesman." Early in the forenoon of 24 March 1966 he visited a construction project near Riverdale to sell some paint. While looking for the paint foreman he tripped over a piece of building material. He broke his fall by extending his right arm. Later in the day, as he was homeward bound in his automobile, he was struck in the rear by another vehicle and "jammed forward into the 1965 Ford" ahead of him. He was thrown forward and his right hand

---

1. Gilbert and Sullivan, *Iolanthe,* Act II, The Peers' Chorus.
2. Joseph M. Mathias, Associate Judge, the Circuit Court for Montgomery County.

struck the "dashboard." About four hours later his wrist began to swell causing him considerable pain. On the following day he went to see Dr. Isadore Shulman who found that he had sustained an "oblique fracture of [the] distal shaft of [the] ulna." Dr. Shulman, having applied temporary splints, referred him to Dr. Edward C. Wilson, Jr., who confirmed Dr. Shulman's diagnosis, adding that there was some "separation of the fragments." Dr. Wilson ordered X-rays and applied a plaster cast to his forearm.

The "Employee's Claim" was prepared by the appellee Liberty Mutual Insurance Co. (Liberty),[3] Hanline's compensation carrier, in Liberty's Washington office. The claim recites, among other things, that Ackerhalt "fell down on a piece of construction material" on *Friday, 25 March 1966* at 12 noon. The claim is dated 7 April 1966 and it appears to have been received in the Commission's office on 11 April. Although it was *not* signed by Ackerhalt it was signed by an agent of Liberty to signify consent to the passage of an award. The Employer's First Report of Injury, which also appears to have been prepared by Liberty, contains substantially the same information. It was received in the Commission's office on 4 April. The Commission's order finding accidental injury and awarding compensation was passed on 19 April 1966.

During the weeks following the award Liberty seems to have become aware of Ackerhalt's automobile accident of 24 March. It then succeeded in persuading the Commission to hold a hearing on the following two issues: (1) is Ackerhalt's disability the "result of an accidental personal injury rising out of and in the course of employment;" and (2) should the 19 April 1966 award be rescinded.

At the hearing, which was held on 1 August 1966, Liberty appears to have persuaded the Commission that while Ackerhalt did sustain an accidental injury on 25 (24) March 1966, his disability "is not the result of an accidental injury arising out of and in the course of his employment," and on 24 August the Commission rescinded its order of 19 April. At this point Ackerhalt retained counsel who, on 20 September, filed on his

---

3. From here on "Liberty" includes "Hanline."

behalf an appeal from the order of 24 August. During the week following the filing of the appeal, counsel for Ackerhalt and the Commission agreed that a rehearing would be scheduled upon the dismissal of the appeal. The appeal was dismissed on 28 September and the rehearing was scheduled for 3 October. At the hearing, which actually was held on 21 November, Liberty pressed, as it had at the 1 August hearing, for the denial of the claim on the ground that Ackerhalt's disability was the result of the automobile accident, not the fall. Counsel for Ackerhalt pointed out that it should not make any difference since he was in the course of his employment at the time of the collision. He was told by the Commission, he said, to file a new claim, asserting an injury in the automobile accident "and then we [the Commission] will issue compensation." On 9 December the Commission passed an order in which it was stated that the Commission had "concluded to grant * * * [Ackerhalt's] motion for rehearing" but at the same time it affirmed the order of 24 August rescinding the award of 19 April. There was no appeal from this order.

The new claim was filed on 19 December. The information contained therein was pretty much the same as that set forth in the earlier application except that the automobile accident was given as the cause of the injury. Liberty promptly demanded a hearing.

At the hearing, which was held on 23 January 1967, Liberty resisted the claim on the ground that Ackerhalt fractured his arm not in the automobile accident but when he fell earlier that day. The Commission found as a fact that he fell but that he did not injure himself, that he was injured in the automobile accident and that the injury arose out of and in the course of his employment. The Commission's order was dated 2 February 1967. The appeal of Liberty was timely filed in the Circuit Court for Montgomery County.

The case came on for trial on 2 April 1968. Liberty called Ackerhalt as an adverse witness and elicited from him testimony the relevant excerpts from which we have set out below.

"Q. Mr. Ackerhalt, before the automobile accident on March 24, 1966, and after you had left Landover

Hills, you had stopped to buy groceries, and shopped on the way home, is that correct?

"A. That was my intention. I didn't do it."

* * *

"Q. Maybe this will refresh your recollection. I am reading from page 21 of the transcript of August 1, 1966: * * * 'Yes, and I stopped off to get some groceries and shop.' Does that refresh your recollection?

"A. That was my intention, to stop off and get groceries.

"Q. Your testimony today is that you had not stopped for groceries before the accident?

"A. No, sir."

* * *

"Q. Now when you testified before the Workmen's Compensation Commission on August 1, 1966, you testified that you fell on the job on the 23rd, is that not true?

"A. I *believe* it was the 24th." (Emphasis added.)

* * *

"Q. You think today that you fell on the job on the 24th?

"A. That is right, the 24th."

* * *

"Q. Did you hold out your right arm to break your fall, is that right?

"A. That is right.

"Q. Is that how you fractured your right wrist?

"A. *I believe so.*" (Emphasis added.)

* * *

"THE COURT: I don't think it is very clear, the sequence of these accidents. On one occasion he said he first saw Dr. Shulman on the 25th. Then he seemed to agree, or later claimed that he first saw him on the 24th of March. It is not clear in my mind, and it is not clear in my mind what the sequence of these injuries or accidents was, whether they both occurred the same day, one in the morning, one in the after-

noon, different days, or what. Maybe you can clear this up.

"THE WITNESS: They occurred the same day.

"THE COURT: You had a fall on the job?

"THE WITNESS: That is right.

"THE COURT: When you tripped over a piece of Sheetrock, and that was in the morning? [8:30 a.m.]

"THE WITNESS: That is right.

"THE COURT: Now on the very same day, at 4:30 in the afternoon, you were involved in an automobile accident?

"THE WITNESS: Yes, sir.

"THE COURT: And when did you first see Dr. Shulman?

"THE WITNESS: The next day."

\* \* \*

"Q. Did you go to see any doctor before you had the automobile accident?

"A. No."

\* \* \*

"BY MR. LINSENMEYER:

"Q. 'Getting back to this automobile accident, isn't it true that you were involved in the automobile accident the day before you fell down on the job?' A. 'Not the day before, the day after.' Doesn't that refresh your recollection, that these two incidents did not occur on the same day?"

\* \* \*

"A. Both happened on the same day."

\* \* \*

"Q. The question is, are you now saying that your testimony given before the Workmen's Compensation Commission in August of 1966 was not true?

"A. I honestly don't remember.

"THE COURT: Or was inaccurate?

"THE WITNESS: I have to say it is inaccurate."

\* \* \*

"CROSS-EXAMINATION

"BY MR. INTRATER:

"Q. Mr. Ackerhalt, is there any question in your mind that you had two accidents on the same day, one by falling and one in an automobile accident?

"A. Both on the same day."

\* \* \*

"Q. And what part of your body, if any, did you injure in the automobile accident?

"A. I was jolted forward."

\* \* \*

"Q. What happened, if anything, to your wrist in the automobile accident? I don't want you to answer medically, just what happened to your wrist?

"A. My hand went forward to the dashboard.

"Q. Did they strike the dashboard?

"A. Yes.

"Q. Did your right hand strike the dashboard?

"A. Yes.

"Q. Now when did your wrist start to aching?

"A. During the evening.

"Q. Was that before or after the accident?

"A. After the accident.

"Q. How long after the accident?

"A. Possibly four hours."

\* \* \*

"Q. You testified here that you felt that you broke your wrist actually when you fell on the job, is that correct?

"A. That is right.

"Q. *That is your belief?*

"A. *That is right.*" (Emphasis added.)

\* \* \*

"Frankel: [4] 'After you fell did your hand turn black and blue?'

"Answer: 'And it swelled up badly.'

"BY MR. LINSENMEYER:

---

**4.** Harold Lee Frankel, the member of the Workmen's Compensation Commission who presided at the 1 August 1966 hearing, the transcript of which is not in this record.

"Q. Isn't that what you said to the Commissioner?

"A. It swelled up at night.

"Q. Are you then saying that it didn't swell before the accident?

"A. No."

\* \* \*

"THE COURT: The hand did not begin to swell until after the automobile accident, which took place at 4:30 in the afternoon?

"THE WITNESS: That is right.

"THE COURT: Before that you didn't notice any swelling in your hand?

"THE WITNESS: No."

\* \* \*

"Q. Is it true that you still feel that you injured your arm in the morning when you fell?

"A. *I thought that*." (Emphasis added.)

Other than to introduce into evidence the Employee's Claim of 11 April (unsigned by Ackerhalt), the Employee's Claim of 19 December 1966, Dr. Shulman's report of 28 May 1966 and Hanline's Report of Injury of 4 April 1966, Liberty offered nothing further. Ackerhalt introduced Dr. Shulman's report of 9 June 1966 and the Commission's order of 2 February 1967.

In support of its motion for a directed verdict Liberty gave as its principal reason the lack of legally sufficient evidence to support a finding that Ackerhalt's disability "to his right wrist \* \* \* [was] the result of an automobile accident" on 24 March. His "testimony [it went on to say] \* \* \* [was] so contradictory that it \* \* \* [had] no probative value" requiring reliance by the jury on conjecture and speculation. That is also the thrust of its argument here.

It will be helpful, perhaps, to give some thought to how the posture of Liberty in the court below may be affected by some of our recent decisions. In *Blake Constr. Co. v. Wells,* 245 Md. 282, 286-87, 225 A. 2d 857 (1967), we said:

"The decision of the Commission is, of course, prima facie correct and the burden of proof is upon the party attacking the same. Code, Art. 101, § 56 (c). This

means nothing more than that, if the mind of the trier of facts is in equal balance on the evidence in the record, the finding of the Commission should be affirmed. *Greenwalt v. Brauns Bldg. Specialties Corp.*, 203 Md. 313, 318, 100 A. 2d 804 (1953). * * * In *Williams Constr. Co. v. Bohlen*, 189 Md. 576, 580, 56 A. 2d 694 (1948) we held that:

" '* * * where the Commission has considered evidence of essential facts, and has drawn one of two different permissible inferences, there may be imposed upon the party attacking the decision of the Commission merely a burden of persuasion, and not necessarily a burden of additional proof. He may rely upon identically the same evidence that was presented before the Commission. The provision of the Act placing the burden of proof upon the appellant means only that he must prove in the trial Court what he asserts. His burden is to convince the Court or the jury that the Commission decided incorrectly in interpreting the facts, or deducing the inference from the facts, or construing the law applicable to the facts.' "

In *Richard F. Kline, Inc. v. Grosh*, 245 Md. 236, 244, 226 A. 2d 147 (1967), Judge Finan, for the Court, said:

"The Workmen's Compensation Law provides that an award of the Commission shall be presumed to be correct and that the party appealing from the award has the burden of proving that the Commission was in error. (Art. 101, § 56(c)). This Court has also on other occasions stated that:

" 'The general rule in Workmen's Compensation cases is that where there is *any* evidence from which a rational conclusion may be drawn, as opposed to the theory of a prayer for a directed verdict, the trial court must leave to the jury all considerations as to the weight and value of such evidence.' *Jewel Tea Co. v. Blamble, supra* [227 Md. 1], 4, 174 A. 2d 765."

We said, in *County Comm'rs v. Cole,* 237 Md. 362, 366, 206 A. 2d 553 (1965) :

> "If reasonable minds could not disagree about the conclusion resulting from a particular set of undisputed or conceded facts, the question becomes one of law to be decided by the court. *If reasonable persons could disagree as to what the facts are, or the inferences and conclusions to be drawn from undisputed facts, the question is one for the trier of the facts."* (Emphasis added.)

It will be recalled that Liberty chose to meet its burden of proof with the testimony of Ackerhalt. We said in *P. Flanigan & Sons v. Childs,* 251 Md. 646, 652, 248 A. 2d 473 (1968) :

> "Maryland Code (1957, 1965 Repl. Vol.) Art. 35, § 9 permits the calling of an adverse party as a witness. When an adverse party is called by an opposite party, the opposite party is bound by the testimony of the adverse party unless rebutted, contradicted or discredited."

To the same effect *see Crumpler v. Pierce,* 252 Md. 545, 250 A. 2d 649 (1969) ; *Williams v. Wheeler,* 252 Md. 75, 249 A. 2d 104 (1969) ; *Trusty v. Wooden,* 251 Md. 294, 247 A. 2d 382 (1968). Since Ackerhalt's testimony has been neither rebutted nor contradicted we must determine whether it has been discredited. Liberty insists that the record is "replete with admissions by * * * [Ackerhalt] that he injured and fractured his right wrist [in] the morning preceding the auto collision." Before considering whether any significance attaches to any such admissions, consideration must be given to those facts about which there seems to be no dispute.

Ackerhalt tripped and fell around 8 :30 a.m. on 24 March 1966. He used his right arm to break his fall. He felt no pain and he had no discomfort during the day. At 4 :30 p.m. he was thrown up against the "dashboard" of his car, striking his right hand. Four hours later his wrist began to ache and to swell. He conceived the notion that his symptoms stemmed from the fall. Apparently that is what he told Dr. Shulman and the Lib-

erty agent who prepared the first Employee's Claim. He has been steadfast in his belief and he has said so on a number of occasions.

But Ackerhalt's belief that it is so does not make it so. Liberty, nevertheless, equates the fact that Ackerhalt *believes* he fractured his arm when he fell with its claim that it is a fact that he actually did fracture it at that time. A hundred years ago the world was full of people who believed that exposure to the night air was the cause of malaria and doubtless there were thousands who, upon request, would have given sworn testimony that it was indeed so. We now know, of course, that to acquire the disease one must be bitten by an infected female anopheles mosquito. It seems clear to us that Ackerhalt did not know when the fracture actually occurred even though he may have said it happened in the morning. In the circumstances then, we think he was stating not a fact but an opinion. It will be recalled also that Dr. Shulman referred Ackerhalt to Dr. Wilson for further treatment. Although Dr. Wilson's report is in the transcript of the record the parties apparently have chosen to ignore it. One should observe that Dr. Wilson saw Ackerhalt a week after his injury and that his report was dated 15 April. In the section of the report labeled "history as told by patient" Dr. Wilson wrote, "Chain reaction automobile accident." We think perhaps this has a connotation of some significance. Reasonable minds could conclude that Ackerhalt related to Dr. Wilson the sequence of events on 24 March and that on the evidence before him Dr. Wilson concluded that the automobile accident caused the injury and that he might well have arrived at the same conclusion even if Ackerhalt had expressed to him his belief that the fall was the cause. The Commission, on the evidence before it, felt that "he hurt himself in the automobile accident" because "he had no swelling, no immediate serious pain" after the fall "but he did have it after the automobile accident."

Liberty has directed our attention to other "inconsistencies" and "inaccuracies" in Ackerhalt's testimony and it must be acknowledged that there are a few, but any lawyer who is much in court knows that in any case where a witness gives testimony four times, once without counsel, over a period of 20

months, contradictions, inconsistencies and inaccuracies are bound to creep into the record. Indeed any witness who repeats testimony verbatim four times hand running is suspected of testifying by rote. We have examined the "inconsistencies" and "inaccuracies" pointed out by Liberty but we see in them nothing of significance.

An odd facet of this case is the apparent concession that Ackerhalt's injury is compensable whether it is the result of the fall or of the automobile accident. Probably Liberty's change of heart after the first award was engendered by a notion that the injury, if sustained in the automobile accident, may not have arisen out of and in the course of Ackerhalt's employment. At some point, however, it must have become obvious to Liberty that Ackerhalt was, at the time of the collision, still in the course of his employment. It is difficult to understand why it persisted thereafter in resisting the claim, particularly on the ground that the injury resulted from the fall. Liberty seems to want to "run with the Hare and holde with the Hounde." [5]

Since we are satisfied that there was before the jury evidence legally sufficient to support a finding that Ackerhalt was injured in the automobile accident the judgment of the learned trial judge must be reversed.

> *Judgment reversed.*
> *Case remanded for further proceedings.*
> *Costs to be paid by appellees.*

---

5. John Lyly, *Euphues* [1579] (Arber's Reprint) p. 107.