JAMES H. ROSE *v.* STATE OF MARYLAND —
CLIFTON T. PERKINS HOSPITAL ET AL.

[No. 486, September Term, 1974.]

*Decided May 28, 1975.*

The cause was argued before THOMPSON, GILBERT and MOORE, JJ.

*Roger N. Powell,* with whom was *Paul A. Gibbons* on the brief, for appellant.

*Charles R. Goldsborough, Jr., Special Attorney,* with whom were *Francis B. Burch, Attorney General* and *J. Howard Holzer, Special Attorney,* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

In this workmen's compensation case, a jury in the Circuit Court for Anne Arundel County returned *negative* answers to the following "Issues" presented to them by the trial judge (Childs, J.) for determination:

1. Did the claimant, James H. Rose, sustain an accidental injury to his lumbrosacral spine arising out of and in the course of his employment on the night of April 21st-22nd, 1972?

2. Was claimant, James H. Rose, disabled as a result of an accidental personal injury arising out of and in the course of his employment on the night of April 21st-22nd, 1972?

The Workmen's Compensation Commission, from whose award the employer and insurer appealed to the Circuit Court, had made *affirmative* findings upon substantially the same issues. It also found that appellant had waived compensation for temporary total disability and had accepted sick leave wages in lieu thereof from April 22 to September 2, 1972. The Commission further found that the Clifton T. Perkins State Hospital, employer, and State Accident Fund, insurer, were liable for the employee's medical bill at Maryland General Hospital in the amount of $2,109.75 and ordered payment or reimbursement in that

sum. The Commission's award was subject to "further determination as to whether the claimant sustained any permanent disability; subject to the provisions of the Workmen's Compensation Law of Maryland."

On this appeal, Mr. Rose contends that the jury's determination — which in effect reversed the finding of accidental injury on the part of the Commission [1] — should be set aside. His challenge is two-pronged: (a) that the trial court erred in denying his motion for a directed verdict at the close of the evidence; and (b) that reversible error was committed by the admission into evidence of three photographs taken by the hospital photographer at Clifton T. Perkins State Hospital. We find no error and affirm.

I

On the date of the alleged accident, April 22, 1972, the appellant was 43 and had been employed as a security guard at Clifton T. Perkins State Hospital for almost ten years. At about 1:45 a.m. on April 22, while he was making a security check on one of the wards, a patient requested him to close a window. As shown by the testimony and photographs, there are iron bars inside the windows, which are casement-type, not sash-type, with upper and lower sections which must be pushed to open and pulled to close. In his "report of injury," appellant wrote: "When closing window and the position my body was in [sic] I had severe pain in my back." A co-worker, Ronald Lee Lynch, testified that Mr. Rose was "yanking" on the upper section, made a "moaning noise" and said he had hurt himself. Appellant's wife testified that when he returned home Friday morning he was in pain. She applied heat to his back and attempted to reach the family doctor, George Groleau, M.D. Mr. Rose was unable to get out of bed on Sunday evening when he was next scheduled to work, she said.

Dr. Groleau, who saw him on a house call on April 24, 1972, was "fairly certain he had a disc." Medication for pain

---

1. The trial judge instructed the jury that Mr. Rose was acting in the scope of his employment. The principal question submitted for determination was whether or not the injury sustained was "accidental."

was prescribed and the patient was advised to see Dr. R. K. Thompson, a neurological surgeon, if the medicine afforded no relief. Dr. Thompson examined him, as an in-patient, on April 26, 1972 and found a lumbar disc derangement for which surgery was performed on May 8, 1972, at Maryland General Hospital. Mr. Rose did not return to his employment until September 2, 1972.

Dr. Thompson was subpoenaed below by both sides.[2] He testified that he had first seen Mr. Rose on February 10, 1972, *two months before the accident,* when appellant related a history of having first hurt his back *two years before,* "while working at the Clifton T. Perkins State Hospital while closing a window in 1970." [3] Exercises were prescribed for Rose by Dr. Thompson in February, 1972 but because "he had been doing [them] incorrectly and hadn't come back at the end of the month when he was supposed to, . . . [and] his pain was more severe and that he had a complaint of weakness in his legs and *for this reason* [emphasis added], we put him in the hospital on April the 26th, 1972." Although Dr. Thompson did complete a medical report for the Workmen's Compensation Commission on February 22, 1973 in which the entry for "date of accident or onset of disease" was listed as April 21, 1972, he testified that he was not aware, at the time he admitted appellant to Maryland General Hospital, of the "second injury," of which he became informed only at the time of filing the Commission report, *i.e.,* February, 1973, and had "admitted [Rose] on the basis of his symptoms getting worse."

Dr. Thompson also read from the records of Maryland General Hospital, where appellant underwent surgery on May 8, 1972 for removal of the ruptured disc. These records confirmed the patient's two-year history of pain and referred to the April, 1972 incident as "an acute exacerbation

---

2. At the hearing before the Commission, testimony was received only from appellant, his wife, and the chief security officer at Perkins State Hospital. Appellant's medical records were also received. At the trial below five witnesses, including Mrs. Rose and Doctors Groleau and Thompson, testified in the Employer-Insurer's case.

3. The record discloses that Mr. Rose made no compensation claim for the 1970 occurrence.

of pain." The appellant himself testified that he did experience pain when he closed a window, on his job at the Hospital, in 1970 and also felt pain again from closing a window which was "stuck," on April 21, 1972, the date of the "accident" in question.

## II

On the basis of the evidence, and inferences properly deducible therefrom, appellant claims that the question of whether his injury and disability was of accidental origin was one of law for the court and that the court erroneously denied his motion for a directed verdict. In support of the motion, counsel urged upon the trial court:

> "They [employer-insurer] have to prove the Commission was wrong and I have to prove nothing because all the presumptions that go with the Workmen's Compensation Commission follow in my favor. The presumption of correctness of the award is in my favor."

The quoted language represents a misstatement of the law, a misunderstanding of the meaning of Art. 101, § 56 (c), upon which appellant relies:

> "In all court proceedings under or pursuant to this article, the decision of the Commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same."

This section, as the Court of Appeals observed in *Stewart & Co. v. Howell,* 136 Md. 423, 110 A. 899 (1920), simply places the burden of proof upon the party taking the appeal, irrespective of whether appellant is the claimant or the employer and insurer. The appeal provisions of our Workmen's Compensation statute contemplate a trial which is essentially *de novo. Richardson v. Home Mutual,* 235 Md. 252, 201 A. 2d 340 (1964); *Smith v. State Roads Commission,* 240 Md. 525, 214 A. 2d 792 (1965). This, however, does not mean that the party attacking the Commission's finding

must adduce additional evidence at the *de novo* proceeding, whether before a jury or the court; nor, indeed, that he must present even as much evidence. As Judge Adkins wrote in *Stewart & Co. v. Howell, supra*:

> "In other words it establishes no new rule when the plaintiff happens to be the party appealing, as the burden was always upon the plaintiff to prove his case. *But it shifts the burden from the plaintiff to the defendant where the defendant loses before the Commission and desires to appeal from its decision, requiring the defendant in such a case to satisfy the jury by a preponderance of testimony that the plaintiff is not entitled to the award made by the Commission.*" (Emphasis added.)

Thus the party who appeals an award of the Commission has the "burden of persuasion" or in Wigmore's phrase,[4] "the risk of nonpersuasion" — the same burden that attends parties having the affirmative of an issue in civil cases generally. *Dent v. Cahill*, 18 Md. App. 117, 305 A. 2d 233 (1973). As Judge Collins stated for the Court of Appeals in the leading case of *Greenwalt v. Brauns Bldg. Specialties Corp.*, 203 Md. 313, 100 A. 2d 804 (1953):

> "This burden of proof provision means nothing more than that, if the mind of the trier of facts is in equal balance on the evidence in the record, the findings of the Commission should be affirmed."[5]

It follows inevitably, therefore, that the claimant-appellant is unaided by any presumption, as contended, and our evaluation of his assertion of error in the denial of his motion for a directed verdict is measured by the general rule in workmen's compensation cases that: "[W]hen there is *any* evidence from which a rational conclusion may be drawn, as opposed to the theory of a prayer for a directed

---

4. *Wigmore on Evidence* § 2485 at 270 (1940).

5. The Greenwalt rule has been cited approvingly in more recent cases, *e.g.*, Smith v. State Roads Commission, 240 Md. 525, 214 A. 2d 792 (1965), *supra;* Blake Construction Co. v. Wells, 245 Md. 282, 225 A. 2d 857 (1967); and Morris v. Christopher, 255 Md. 372, 258 A. 2d 172 (1969).

verdict, the trial court must leave to the jury all considerations as to the weight and value of such evidence." *Jewel Tea Co. v. Blamble,* 227 Md. 1, 174 A. 2d 764 (1961), cited by Finan, J. in *Richard F. Kline, Inc. v. Grosh,* 245 Md. 236, 244, 226 A. 2d 147 (1967); *Ackerhalt v. Hanline Brothers,* 253 Md. 13, 252 A. 2d 1 (1969).

In *Ackerhalt,* the Court of Appeals reversed a judgment upon a directed verdict in favor of the employer and insurer. Judge McWilliams writing for the Court there quoted the following language of Digges, J. (by special assignment) in *Anne Arundel County v. Cole,* 237 Md. 362, 206 A. 2d 553 (1965) where an accidental injury resulting from horseplay was found compensable:

> "If reasonable minds could not disagree about the conclusion resulting from a particular set of undisputed or conceded facts, the question becomes one of law to be decided by the court. *If reasonable persons could disagree as to what the facts are, or the inferences and conclusions to be drawn from undisputed facts, the question is one for the trier of the facts.*" (Emphasis added.)

The central issue in this appeal, upon which appellant's case must rise or fall, is whether an accident occurred in the early morning hours of April 21, 1972 when he reached out to close a window as requested by a hospital patient. Concerning this fundamental question, and considering the evidence and all logical and reasonable inferences deducible therefrom in the light most favorable to the appellee, we find that reasonable persons could disagree as to what the facts are and the inferences and conclusions to be drawn from such facts as may be undisputed.

On the side of the appellant is his own statement concerning the "position" of his body; the testimony of his wife concerning her observations of him and her testimony of a report to the employer that he had an "accident;" the testimony of the co-worker that appellant emitted a moaning sound after closing the window; the medical report

of the neurologist, Dr. Thompson, indicating that Mr. Rose had used a ladder at the time of the incident and another report by Dr. Thompson that the patient had an accident on April 21, 1972.

On the other hand, the chief security officer at the Hospital, Mr. George W. Murphy, testified that he first learned of appellant's claim of accidental injury when he received an accident report on September 14, 1972; the sick call register maintained for employees at the employer-hospital recorded an entry on April 23, 1972 of a call from Mrs. Rose that her husband "will not be in today — he is sick," an entry dated April 24th that Mrs. Rose reported her husband "still sick — out for balance of week" and a series of subsequent calls by her concerning his "sick" condition, none of which referred to any accident; testimony from the chief security officer that the use of ladders was forbidden in maximum security areas where the alleged accident occurred; and that the windows were equipped with metal arm restraints so that it would not be possible to extend them more than 40 degrees and that the upper section, when fully opened, extended approximately 14 or 15 inches; the testimony of the neurologist, Dr. Thompson, that he had seen the appellant two months prior to the alleged accident for a back condition alleged to have occurred in the same manner some two years before and that he was unaware, when the patient was admitted to the hospital on April 25, 1972, that he was involved in an alleged accident on April 21, 1972.

In sum, we deem it abundantly clear that there were numerous factual issues and inconsistencies which precluded the granting of appellant's motion for a directed verdict and that the trial court properly submitted the case to the trier of facts upon appropriate instructions, to which there were no exceptions, including a careful exposition of the meaning of accidental injury.

### III

Appellant's remaining contention is that the admission

into evidence of three photographs of a window at Perkins State Hospital constituted reversible error.

The photographs were taken by the hospital photographer at the instance of the chief security officer, George W. Murphy, subsequent to the alleged accident and in preparation for Mr. Murphy's testimony on behalf of the State. They showed a security guard, other than Mr. Rose, standing before a window, and, in separate poses, closing the upper section and the lower section. Mr. Murphy's testimony, uncontradicted, was that all the windows in the hospital were constructed of steel and were identical and that the individual guard in the photograph was approximately the height of Mr. Rose. On behalf of appellant, it was adduced that the positions of the window sections at the time of the alleged accident and at the time pictures were taken, were not the same.

Claiming prejudicial error, appellant contends that, once admitted, the pictures "became evidence that the windows could be closed by anyone without suffering the consequences complained of" by Mr. Rose. Appellee responds that the pictures were introduced (a) to controvert any contention concerning the necessity for using a ladder and (b) to place the height and type of window in proper perspective.

It is well established that the admission of photographs is within the sound discretion of the trial judge and his rulings thereon will not be disturbed in the absence of a showing of abuse of discretion. *Marlow v. Davis*, 227 Md. 204, 176 A. 2d 215 (1961); *City of Baltimore v. State Roads Commission*, 232 Md. 145, 192 A. 2d 271 (1963); *Sanner v. Guard*, 236 Md. 271, 203 A. 2d 885 (1964).

The above holdings of the Court of Appeals have of course been followed by this Court. *Morris v. Peace*, 14 Md. App. 681, 288 A. 2d 600 (1972); *Sun Cab Co. v. Walston*, 15 Md. App. 113, 289 A. 2d 804 (1972). In *Morris v. Peace, supra*, appellant's claim of error in the admission of five photographs was based on the fact that between the time of the accident and the date the photographs were taken, a traffic

light was installed and part of the intersection had been widened. Rejecting the claim of error, Judge Thompson, writing for the Court, stated:

"... Admission of such [photographic] evidence is in the discretion of the trial judge and *is not open to review unless plainly arbitrary*. ... We could not have found reversible error had the trial judge excluded the photographs, neither can we find reversible error because they were admitted." (Emphasis added.)

We find appellant's second assignment of error is also without foundation.

*Judgment affirmed; appellant to pay the costs.*